**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com

Counsel for Plaintiff

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAVIER TAMES, Individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>        v.<br><br>DESARROLLADORA HOMEX, S.A.B. DE C.V. a/k/a HOMEX DEVELOPMENT CORP., GERARDO DE NICOLÁS GUTIÉRREZ, and CARLOS MOCTEZUMA VELASCO,<br><br>        Defendants. | Case No. 17-cv-1416<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Javier Tames ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Desarrolladora Homex,

S.A.B. de C.V. a/k/a Homex Development Corp. ("Homex" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities, other than Defendants, who purchased or otherwise acquired the publicly traded American Depositary Shares ("ADSs") of Homex between April 30, 2012 and May 5, 2016, both dates inclusive (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misleading statements entered this District.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, as set forth in the accompanying Certification, purchased Homex securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.      Defendant Homex develops, constructs, and sells housing properties in Mexico. Homex offers homes for entry level, middle income, and upper income groups. The Company is incorporated in the United Mexican States and its principal executive offices are located at Boulevard Alfonso Zaragoza Maytorena 2204, Bonanza 80020, Culiacán, Sinaloa, México. From approximately 2004 through 2014, Homex's ADSs were listed and publicly traded on the New York Stock Exchange ("NYSE") under the ticker "HXM." On May 2, 2014, the NYSE commenced delisting proceedings of Homex's ADSs and immediately suspended trading in the Company's ADSs. In June 2014, Homex's ADSs were delisted from the NYSE. Thereafter, the ADSs were quoted on the OTC Link under the ticker "DHOXQ" and later "DHOXY." On December 9, 2016, the U.S.-based facility for Homex's ADSs was terminated.

8.      Defendant Gerardo de Nicolás Gutiérrez ("Gutiérrez") has been the Chief Executive Officer ("CEO") of Homex since June 5, 2007.

9.      Defendant Carlos Moctezuma Velasco ("Velasco") has been the Chief Financial Officer ("CFO") of Homex since December 2008.

10.      Defendants Gutiérrez and Velasco are sometimes referred to herein as the "Individual Defendants."

11.      Each of the Individual Defendants:

(a)      directly participated in the management of the Company;

(b)      was directly involved in the day-to-day operations of the Company at the highest levels;

(c)      was privy to confidential proprietary information concerning the Company and its business and operations;

(d)      was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)      was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)      was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)      approved or ratified these statements in violation of the federal securities laws.

12.      The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.      The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

14.      The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

### Relevant Accounting Policies

15.     For its fiscal year 2011, Homex prepared its financial statements in accordance with Mexican Financial Reporting Standards ("MFRS"), and, for its fiscal year 2012, Homex prepared its financial statements in accordance with International Financial Reporting Standards ("IFRS"). For purposes of its annual 2011 Form 20-F filing with the Commission, Homex reconciled its consolidated reports of net income, including revenues, and its consolidated stockholder's equity to U.S. Generally Accepted Accounting Principles ("U.S. GAAP").

16.     In its annual filings on Form 20-F for the fiscal years 2011 and 2012, Homex stated that revenues from Homex's sales were recognized only upon the fulfillment of certain conditions, including "control" of the home having been transferred to the homebuyer and it having become probable that Homex will "receive the economic benefits associated with the transaction."

17.     Homex's internal accounting policies and procedures further provided that revenue could be recognized only for homes that attained "Operada" (Operated) status, which likewise required the fulfillment of various conditions, including certification that the home had become habitable (*i.e.*, that the home had been built) and that transfer of title to the buyer had occurred.

18.     Accordingly, under U.S. GAAP, IFRS, and Homex's own disclosures and internal policies and procedures, a home had to be substantially constructed before Homex could meet the criteria above and thus potentially recognize revenue for its sale.

**Materially False and Misleading Statements**

19.     On April 30, 2012, the Company filed a Form 20-F for the fiscal year ended December 31, 2011 (the "2011 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2011. The 2011 10-K was signed by Defendant Velasco. The 2011 10-K also contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by Defendants Gutiérrez and Velasco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

20.     The 2011 20-F touted Homex's total housing revenues for the 2011 fiscal year and the number of units sold by Homex during the 2011 fiscal year, stating in pertinent part:

> ***Results of Operations for the Year Ended December 31, 2011 Compared to the Year Ended December 31, 2010 - MFRS***
>
> ***Revenues***
>
> **Total housing revenues in 2011 increased 9.4% to Ps. 20,210.0 million** from Ps. 18,465.2 million in 2010, driven by volume growth within the affordable entry-level segment, confirming Homex' focus on organic growth in Mexico in attractive home markets that provide continued growth opportunities. The middle-income segment represented 14.9% of total revenues in 2011 compared to 26.3% in 2010 as a result of our proactive measures to reduce exposure to the segment. Revenues from Brazil represented 2.7% of our total revenues in 2011 compared to 0.9% during 2010, reflecting Homex's improved operations and increased experience in the country. Other revenues remained relatively stable at 7.5% of total revenues during 2011 from 6.0% during 2010.
>
> **Units closed in 2011 increased 18.4% to 52,486 homes**, from 44,347 homes in 2010. Affordable entry-level sales volume in Mexico increased by 21.8% in 2011 representing 91.2% of total titled volume. Middle-income sales volume decreased 25.5% compared to 2010 levels reflecting our strategy to reduce our exposure to the high-middle-income segment and concentrate our product offering at a price where middle-income homes can be readily financed through co-financing mortgage programs and in view of continued mortgage financing

constraints through commercial banks and sofoles. We have continued to concentrate on increasing our market share in our core business, the affordable entry-level segment, where mortgage financing availability is strongly supported by Infonavit and Fovissste, as well as state housing funds. For the full year 2011, our homes titled in Brazil totaled 1,065 units or 2.0% of total titled units, a 226.7% increase from the 326 units, or 0.7% of total titled units, titled during 2010.

[Emphasis added].

21.     On May 22, 2013, the Company filed a Form 20-F for the fiscal year ended December 31, 2012 (the "2012 20-F") with the SEC, which provided the Company's year-end financial results and position and stated that the Company's internal control over financial reporting and disclosure controls and procedures were effective as of December 31, 2012. The 2012 20-F was signed by Defendant Velasco. The 2012 20-F also contained signed SOX by Defendants Gutiérrez and Velasco attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal controls over financial reporting, and the disclosure of all fraud.

22.     The 2012 20-F touted Homex's total housing revenues for the 2012 fiscal year and the number of units sold by Homex during the 2012 fiscal year, stating in pertinent part:

***Results of Operations for the Year Ended December 31, 2012 Compared to the Year Ended December 31, 2011 - IFRS***

***Revenue***

Total revenues increased 31.7% to Ps.28,749.4 million from Ps.21,823.1 million in 2011.

Revenues from Homex' Infrastructure Division, excluding revenues from the Morelos federal penitentiary, totaled Ps.4,999.9 million, compared to Ps.856.5 million during 2011. The increase is mainly driven by the recognition of construction services revenues on a percentage of completion method related to the Chiapas federal penitentiary as "Homex Infraestructura" (a subsidiary of Homex) is subcontracted as the construction company for the project. The CRS Morelos Correctional Facility and Chiapas Correctional Facility Construction are approximately 82% and 84% complete, respectively, as of December 31, 2012.

Revenues from the Morelos federal penitentiary during 2012 were Ps.4,122.9 million or 14.3% of total revenues.

**Total housing revenues in 2012 decreased 6.8% to Ps. 18,809.9 million** from Ps. 20,179.7 million in 2011, driven by a 23.9% volume decline within the affordable entry-level segment from our Mexico division. The middle-income segment represented 19.1% of total revenues in 2012 compared to 14.9% in 2011 as a result of mortgage availability through co financing products with INFONAVIT as well as mortgage availability through FOVISSSTE. Revenues from Brazil represented 0.5% of our total revenues in 2012 compared to 2.7% during 2011, reflecting the continued administrative delays and challenges encountered mainly in the titling processes. Simultaneously, we have reduced the speed of our investments in construction in progress to reduce capital investments, thus also reducing our level of homes under construction and potential growth.

Other revenues remained relatively stable at 2.8% of total revenues during 2012 from 3.0% during 2011.

**Units closed in 2012 decreased 18.2% to 42,945 homes**, from 52,486 homes in 2011. Affordable entry-level sales volume in Mexico decreased by 23.9% in 2012 representing 85.4% of total titled volume. Middle-income sales volume increased 76.7% in 2012 compared to 2011 levels reflecting a higher mortgage availability through FOVISSSTE and commercial banks for the middle-income segment as well as a low base of comparison from our 2011 results. We have continued to concentrate on increasing our market share in our core business, the affordable entry-level segment, where mortgage financing availability is strongly supported by Infonavit and Fovissste, as well as state housing funds. For the full year 2012, our homes titled in Brazil totaled 249 units or 0.6% of total titled units, a 76.6% decrease from the 1,065 units, or 2.0% of total titled units, titled during 2011.

[Emphasis added].

23.     The statements referenced in ¶¶ 19 - 22 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) between 2010 and 2013, Homex overstated its revenue by 355% or roughly $3.3 billion by reporting fictitious sales of more than

100,000 homes; (2) between 2010 and 2013, Homex overstated the number of units it sold by over 100,000 units or 317% of actual units sold; (3) Homex and certain of its Headquarters Financial Reporting Personnel knowingly and intentionally engaged in a scheme to materially overstate Homex's revenues, homes sold, and other related financial items; and (4) as a result, Defendants' statements about the Company's business, operations and prospects were materially false and misleading and/or lacked a reasonable bases at all relevant times.

24.     On April 30, 2014, *Bloomberg First Word* published a report entitled "Homex Plans to Seek Bankruptcy Protection Today," stating in pertinent part:

> **Homex Plans to Seek Bankruptcy Protection Today:**
>
> Apr 30 2014 14:39:37
>
> By Jonathan Levin
>
> April 30 (Bloomberg) -- El Financiero cited Marcos Martinez, chairman and CEO of Santander Mexico, who spoke today in a meeting with journalists.
>
> - The request will be presented in the state of Sinaloa, where Homex is based.

25.     On April 30, 2014, Homex issued a press release entitled "Desarrolladora Homex, S.A.B. de C.V. announces filing of a pre-packaged concurso mercantil proceeding and disclosure of information provided to creditors in conjunction with its restructuring negotiations," revealing that it filed for bankruptcy protection before the federal court in Culiacán, stating in pertinent part:



**Press Release**

**Desarrolladora Homex, S.A.B. de C.V. announces filing of a pre-packaged *concurso mercantil* proceeding and disclosure of information provided to creditors in conjunction with its restructuring negotiations**

**Culiacán, Sinaloa, Mexico – April 30, 2014 – Desarrolladora Homex, S.A.B. de C.V. (the "Company")** announces that it has filed a request for a pre-packaged *concurso mercantil* proceeding before the federal court in Culiacán.  In accordance with Mexican law, the filing was presented, with a proposed restructuring plan  and was supported by a group of creditors representing, in the aggregate, over 50% of the outstanding consolidated indebtedness of the Company and its subsidiaries filing for the *concurso mercantil* proceeding. .  For more information regarding the *concurso mercantil* filing, please see the Company's website: http://www.homex.com.mx/ri/index/htm

26.     On this news, shares of Homex fell $4.82 per share or over 33.2% from its

previous closing price to close at $9.68 per share on April 30, 2014, damaging investors.

27.     On May 2, 2014, the NYSE issued a press release entitled "NYSE TO SUSPEND

TRADING  IMMEDIATELY  IN  DESARROLLADORA  HOMEX,  S.A.B.  DE  C.V.  AND

COMMENCE DELISTING PROCEEDINGS," stating in pertinent part:

### NYSE TO SUSPEND TRADING IMMEDIATELY IN DESARROLLADORA HOMEX, S.A.B. DE C.V. AND COMMENCE DELISTING PROCEEDINGS

May 02, 2014

NEW YORK, May 2, 2014 – The New York Stock Exchange ("NYSE") announced today that the staff of NYSE Regulation, Inc. ("NYSE Regulation") has determined to commence proceedings to delist the American Depositary Shares (Each representing six Common Shares, no par value) (the "American Depositary Shares") of Desarrolladora Homex, S.A.B. de C.V. (the "Company") — ticker symbol HXM — from the NYSE. Trading

in the Company's American Depositary Shares will be suspended immediately.

NYSE Regulation has determined that the Company is no longer suitable for listing. Pursuant to Listed Company Manual Section ("LCM") 802.01D, NYSE Regulation reached this decision because of the Company's April 30, 2014 announcement that it has filed a request for a pre-packaged concurso mercantil proceeding before the federal court in Culiacán, Mexico. NYSE Regulation noted the uncertainty as to the timing and outcome of the proceedings, as well as the ultimate effect of this process on the value of the Company's American Depositary Shares. Furthermore, NYSE Regulation noted that the Company was delinquent in filing its December 31, 2013 Form 20-F pursuant to Section 802.01E of the NYSE's LCM.

NYSE Regulation notes that it may make an appraisal of, and determine on an individual basis, the suitability for continued listing of a listed security in light of all pertinent facts and circumstances whenever it deems such action appropriate. In addition, NYSE Regulation may, at any time, suspend trading in a security and commence delisting proceedings if it believes that continued dealings in or listing of the security on the NYSE are not advisable.

The Company has a right to a review of this determination by a Committee of the Board of Directors of NYSE Regulation. The NYSE will apply to the Securities and Exchange Commission to delist the American Depositary Shares upon completion of all applicable procedures, including any appeal by the Company of the NYSE Regulation staff's decision.

28.     On this news, upon the resumption of trading, shares of Homex fell $5.38 per share or over 55.5% from its previous closing price to close at $4.30 per share on May 5, 2014, damaging investors.

29.     On May 6, 2016, Homex filed a Form 6-K with the SEC revealing that the SEC issued a Wells notice to Homex and Wells notices to Defendants Gutiérrez and Velasco, stating in pertinent part:

**On April 25, 2016, the United States Securities and Exchange Commission ("SEC") issued a Wells notice to the Company.  The Wells notice indicated that the staff of the SEC's Division of Enforcement has made a preliminary determination to recommend that the Commission authorize the institution**

11

**of an enforcement action against the Company that would allege violations of the anti-fraud and certain reporting, internal control and books and records provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934 in connection with the Company's accounting treatment of certain revenues related to home sales during the period of 2010 through 2012**. The Wells notice does not constitute a determination by the Commission that any violation of law has occurred and, as contemplated by the SEC's process, the Company intends to make a Wells Submission in this matter.

**Separately, on April 25, 2016, the SEC also issued Wells notices to Gerardo de Nicolás and Carlos Moctezuma. These Wells notices indicated that the staff of the SEC's Division of Enforcement has made a preliminary determination to recommend that the Commission authorize the institution of an enforcement action against Messrs. de Nicolás and Moctezuma regarding the same accounting matter and alleging direct and indirect violations of the same provisions of the federal securities laws the SEC identified in the Wells notice issued to the Company. Messrs. de Nicolás and Moctezuma have informed the Company that they intend to take a voluntary leave of absence so that they may devote their energies to responding to this matter.**

**Finally, the Company is reviewing its financial statements filed for the period 2010 through 2012. Until this review is completed, these financial statements should not be relied upon**. As the Company previously disclosed, in connection with its emergence from the Concurso procedure, it has issued audited financial statements for the periods 2013, 2014, and 2015.

[Emphasis added].

30.     On this news, shares of Homex fell $0.115 per share or over 10.2% over two trading days to close at $1.01 per share on May 9, 2016, damaging investors.

31.     On March 3, 2017, the SEC issued a press release entitled "SEC Charges Mexico-Based Homebuilder in $3.3 Billion Accounting Fraud," announcing that Homex agreed to settle charges with the SEC for allegedly reporting $3.3 billion in fraudulent sales revenue to boost revenues in its financial statements during a three year period, stating in pertinent part:

**SEC Charges Mexico-Based Homebuilder in $3.3 Billion Accounting Fraud**

**SEC Uses Satellite Imagery to Crack Case**

**FOR IMMEDIATE RELEASE**
**2017-60**

*Washington D.C., March 3, 2017* — The Securities and Exchange Commission today announced that Mexico-based homebuilding company Desarrolladora Homex S.A.B. de C.V. has agreed to settle charges that it reported fake sales of more than 100,000 homes to boost revenues in its financial statements during a three-year period.

The SEC used satellite imagery to help uncover the accounting scheme and illustrate its allegation that Homex had not even broken ground on many of the homes for which it reported revenues.

The SEC alleges that Homex, one of the largest homebuilders in Mexico at the time, inflated the number of homes sold during the three-year period by approximately 317 percent and overstated its revenue by 355 percent (approximately $3.3 billion).  The SEC's complaint highlights, for example, that Homex reported revenues from a project site in the Mexican state of Guanajuato where every planned home was purportedly built and sold by Dec. 31, 2011.  Satellite images of the project site on March 12, 2012, show it was still largely undeveloped and the vast majority of supposedly sold homes remained unbuilt.



According to the SEC's complaint, Homex filed for the Mexican equivalent of bankruptcy protection in April 2014 and emerged in October 2015 under new equity ownership.  The company's then-CEO and then-CFO have been placed on

unpaid leave since May 2016. Homex has since undertaken significant remedial efforts and cooperated with the SEC's investigation.

"As alleged in our complaint, Homex deprived its investors of accurate and reliable financial results by reporting key numbers that were almost completely made up," said Stephanie Avakian, Acting Director of the SEC's Enforcement Division. "The settlement takes into account that the fraud occurred entirely under the watch of prior ownership and management, the company's new leaders provided critical information regarding the full scope of the fraudulent conduct, and the company continues to significantly cooperate with our ongoing investigation."

Melissa Hodgman, Associate Director of the SEC's Enforcement Division, added, "We used high-resolution satellite imagery and other innovative investigative techniques to unearth that tens of thousands of purportedly built-and-sold homes were, in fact, nothing but bare soil."

The SEC separately issued a trading suspension in the securities of Homex.

Without admitting or denying the allegations in the SEC's complaint filed in U.S. District Court for the Southern District of California, Homex consented to the entry of a final judgment permanently enjoining the company from violating the antifraud, reporting, and books and records provisions of the federal securities laws, and the company agreed to be prohibited from offering securities in the U.S. markets for at least five years. The settlement is subject to court approval.

32.      The SEC's civil action against Homex is styled as *Securities and Exchange Commission v. Desarrolladora Homex, S.A.B. de C.V.*, Docket No. 3:17-cv-00432 (S.D. Cal. Mar 03, 2017), and asserted violations of the federal securities laws, and alleged, among other things, that:

1. This case is about a massive financial fraud perpetrated by Desarrolladora Homex, S.A.B. de C.V. ("Homex" or "the Company"), which is headquartered in Culiacán, Sinaloa, and formerly known as Mexico's largest homebuilder. Homex's securities have, at all relevant times, been listed or quoted in the United States. From at least 2010 through 2013 (the "Relevant Period"), and acting, with scienter, through certain of its then senior officers and employees, Homex improperly recognized billions of dollars of revenue. In particular, Homex systematically and fraudulently reported revenue from the sale of tens of thousands of homes annually that it had neither built nor sold. Homex personnel perpetrated this fraud by manually entering false information into its internal accounting and financial systems.

2.   Homex's resulting overstatements of its revenue and the number of residential units sold, across its annual reports filed with the Commission during the Relevant Period, totaled at least MXN $44 billion (USD $3.3 billion), or 355%, and at least 100,000 units, or 317%, respectively.

\*          \*          \*

21.   Homex and certain of its Headquarters Financial Reporting Personnel knowingly and intentionally engaged in a scheme to materially overstate Homex's revenues, homes sold, and other related financial items during the Relevant Period. In just its 2010 through 2012 fiscal years, Homex overstated revenue by at least MXN $44 billion (USD $3.3 billion), or 355% of revenues from actual home sales, and overstated its number of units sold by over 100,000 units, or 317% of actual units sold.

22.   Specifically, the scheme resulted in Homex materially overstating at least the following revenues and number of units sold:

| OVERSTATED REVENUES AND UNITS SOLD | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| FISCAL YEARS 2010-2012 | | | | | | | |
| (Revenue Figures in Millions of MXN $) | | | | | | | |
| | FY 2010 | | FY 2011 | | FY 2012 | | TOTAL 2010-2012 | |
| | Revenue | Unit Sales | Revenue | Unit Sales | Revenue | Unit Sales | Revenue | Unit Sales |
| As Reported on Form 20-F | $18,465 | 44,347 | $20,210 | 52,486 | $18,809 | 42,945 | $57,484 | 139,778 |
| Actual Results | $6,456 | 16,977 | $3,981 | 11,006 | $2,200 | 5,536 | $12,637 | 33,519 |
| Revenue / Units Overstated | $12,009 | 27,370 | $16,229 | 41,480 | $16,609 | 37,409 | $44,847 | 106,259 |
| % Overstatement | 186% | 161% | 408% | 377% | 755% | 676% | 355% | 317% |

23.   Homex made the aforementioned material misstatements publicly in (i) numerous filings with the Commission, including its annual reports on Form 20 F for its 2010 through 2012 fiscal years as well as all of the financial reports it furnished on Form 6-K during the Relevant Period; and (ii) in its public offering documents concerning its February 2012 issuance of $400 million in corporate bonds.

24. In connection with each of the aforementioned annual reports on Form 20-F that Homex filed with the Commission throughout the Relevant Period, Homex's then CEO and CFO each signed certifications indicating that each had reviewed the Form 20-F, and that, among other things, the financial statements and other financial information included therein fairly presented in all material aspects the financial condition, results of operations and cash flows of Homex.

### B. Homex Materially Misstated Revenues Associated with Home Sales By Manually Entering Fraudulent Top-Line Revenue and Cost Entries Concerning Fictitious Home Sales

25. Homex's Headquarters Financial Reporting Personnel intentionally and knowingly uploaded false information into the Company's internal reporting and accounting systems in order to perpetrate the fictitious revenue scheme. Specifically, contrary to the Company's internal controls, policies and procedures, the Headquarters Financial Reporting Personnel did not upload into Contpaq and, for financial reporting purposes, did not use information accurately captured within SIA's Construction, Sales and Operations Modules. Rather, the Headquarters Financial Reporting Personnel manually entered false revenue – including tens of thousands of fictitious home sales – into SIA's Treasury Module. Subsequently, only the false data was uploaded into Contpaq for financial reporting purposes.

26. Certain of Homex's Headquarters Financial Reporting Personnel also maintained a spreadsheet that tracked the fictitious home sales that had been manually entered into SIA's Treasury Module. They used this spreadsheet, which was maintained outside of Homex's internal systems, to ensure that fictitious revenue from manually entered home sales was not double-booked.

27. In order to conceal the enormous level of manually-entered fictitious revenue associated with tens-of-thousands of unbuilt homes, certain of Homex's Headquarters Financial Reporting Personnel also manually entered corresponding false cost-of-sales and inventory information into Contpaq. These manual entries were necessary because, when fictitious revenue was uploaded, the expected cost-of-sales and inventory entries corresponding to the revenue were not reflected in the Contpaq system as they were not entered into the other SIA modules in the normal course of Homex's operations. As a result of the manual entries, the information used for financial reporting radically inflated the data captured within SIA's Construction, Sales and Operations modules.

\*       \*       \*

**The SEC's Investigation**

38. During the Commission's investigation leading to the filing of this action, and continuing until Homex's then-CEO and CFO were placed on unpaid administrative leave in May 2016, Homex failed to correct, restate, or even disclose any concerns as to the reliability of the Company's financial statements included in its SEC filings.

33.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's ADSs, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Homex ADSs publicly traded on the NYSE and the OTC Link during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Homex securities were actively traded on the NYSE and the OTC Link. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and

may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

c.     whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.     whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

e.     whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

f.      whether the prices of Homex securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

g.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      the omissions and misrepresentations were material;

c.      Homex securities are traded in efficient markets;

d.      the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

e.      the Company traded on the NYSE and the OTC Link, and was covered by multiple analysts;

f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

g.      Plaintiff and members of the Class purchased and/or sold Homex securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45.      During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Homex securities during the Class Period.

47.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

48.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

49.     As a result of the foregoing, the market price of Homex securities were artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Homex securities during the Class Period in purchasing Homex securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

50.     Had Plaintiff and the other members of the Class been aware that the market price of Homex securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased Homex securities at the artificially inflated prices that they did, or at all.

51.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

52.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of Homex securities during the Class Period.

## COUNT II

### Violation of Section 20(a) of The Exchange Act
### Against The Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

55.      As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

56.      Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Homex securities.

57.      Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complaint.

58.   By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.   Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.   Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.   Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.   Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 14, 2017                 Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:   /s/ Phillip Kim
Laurence M. Rosen, Esq. (LR 5733)
Phillip Kim, Esq. (PK 9384)
275 Madison Ave., 34th Floor
New York, NY 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com

Counsel for Plaintiff

24