EXECUTION COPY

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAVIER TAMES, Individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>v.<br><br>DESARROLLADORA HOMEX, S.A.B. DE C.V. a/k/a HOMEX DEVELOPMENT CORP., GERARDO DE NICOLÁS GUTIÉRREZ, and CARLOS MOCTEZUMA VELASCO,<br><br>                              Defendants. | Case No. 2:17-cv-01416-ADS-ARL<br><br><u>CLASS ACTION</u> |

<u>**STIPULATION AND AGREEMENT OF SETTLEMENT**</u>

This Stipulation and Agreement of Settlement is made and entered into by and between Lead Plaintiff Jose Acosta, on behalf of himself and all other members of the proposed Settlement Class (defined below), on the one hand, and Defendant Desarrolladora Homex, S.A.B de C.V. a/k/a Homex Development Corporation, on the other, by and through their counsel of record in the above-captioned litigation pending in the United States District Court for the Eastern District of New York. This Stipulation is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof and subject to the Court's approval.

**WHEREAS:**

A.      All words or terms used herein that are capitalized shall have the meanings ascribed to those words or terms herein and in ¶ 1 hereof entitled "Definitions."

B.      Defendant Desarrolladora Homex, S.A.B. de C.V. a/k/a Homex Development Corporation is a Mexican corporation with its principal executive offices located in Sinaloa, Mexico. During a portion of the Class Period, Defendant's ADRs were traded on the New York Stock Exchange under the symbol "HMX".

C.      On May 2, 2014, the New York Stock Exchange commenced delisting proceedings of Defendant's ADRs and immediately suspended trading in the Company's ADRs.

D.      In June 2014, Defendant's ADRs were delisted from the New York Stock Exchange. Thereafter, Defendant's ADRs were quoted on the OTC Link under the ticker "DHOXQ" and later "DHOXY."

E.      On December 9, 2016, the U.S.-based facility for Defendant's ADRs was terminated.

F.      Through an investigation conducted by the SEC, it was alleged that Defendant and certain of its officers and management were entering or causing to be entered fictitious home sales that consequently inflated Defendant's reported home sales figures and revenue (including related financial metrics) from 2010 through the third quarter of 2013. The SEC's allegations in its complaints filed in the SEC's Homex Action and SEC's Former Officers Action lay out in specific details the bases of the SEC's allegations that Defendant and certain of its officers and management conducted a fraudulent scheme and made material misstatements by recording in Defendant's revenues the sales of fictitious homes.

G.      On March 3, 2017, the SEC filed the SEC's Homex Action. The complaint filed in the SEC's Homex Action alleges that Defendant primarily perpetrated accounting fraud by recording fictitious home sales and the related revenue in the company's financial statements filed with the SEC. Lead Plaintiff alleges that the allegations in the SEC's Homex Action serve as one

of the bases that plaintiffs have alleged in support of establishing defendants' violations of the federal securities laws as detailed in the Action's complaint and the *Acosta* Action's complaint. Following the district court's March 28, 2017 order approving the settlement between the SEC and Defendant, the SEC's Homex Action was terminated.

H.    On March 14, 2017, a Class Action Complaint for Violation of the Federal Securities Laws was filed in the U.S. District Court for the Eastern District of New York on behalf of investors in Defendant alleging violations of the Securities Exchange Act of 1934 to commence the Action. ECF No. 1.

I.    On May 15, 2017, Jose Acosta filed his motion to be appointed as the lead plaintiff in the Action pursuant to Section 21D(a)(3)(B) of the Exchange Act,  15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995. ECF No. 8.

J.    On October 11, 2017, the SEC instituted another proceeding stemming from the same alleged accounting fraud in the SEC's Homex Action in the SEC's Former Officers Action. The SEC's complaint in the SEC's Former Officers Action alleges violations of the federal securities laws against Defendant's former chief executive officer, de Nicolás, former chief financial officer, Moctezuma; former controller and administrative and accounting officer, Lafarga; and a former manager, Noe Corrales Reye.

K.    The SEC's Former Officers Action sets forth in substantial detail the investigation undertaken by the SEC concerning the alleged accounting fraud by Defendant's former executives and managers. In its complaint, the SEC discusses information and evidence it received as part of its investigation in support of establishing violations of the federal securities laws by the same individuals named as defendants in the Action and the *Acosta* Action.

L.     On October 20, 2017, Acosta, by and through his counsel, filed a Complaint for Violation of the Federal Securities Laws in the United States District Court for the Southern District of California in the *Acosta* Action against Defendant; de Nicolás; Moctezuma; and Lafarga. Lead Plaintiff alleges that the information in the SEC's Former Officers Action serves as one of the bases of the allegations raised in the *Acosta* Action.

M.     In November 2017, counsel for Acosta began attempting to serve Defendant in the *Acosta* Action via the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

N.     On February 8, 2018, the Court in the Action appointed Jose Acosta as the Lead Plaintiff for the Class. ECF No. 14.

O.     On December 14, 2018, Lead Plaintiff filed a Motion for Leave to Effect Alternative Service in the *Acosta* Action seeking to serve the defendants in the *Acosta* Action.

P.     On March 4, 2019, the court entered an order in the *Acosta* Action granting Lead Plaintiff's Motion for Leave to Effect Alternative Service and service was promptly made upon Defendant.

Q.     In or around April 2019, counsel for Defendant and Lead Plaintiff entered into discussions concerning the parties' respective positions concerning the Action's and the *Acosta* Action's claims, potential damages, defenses, and Defendant's financial capacity to withstand judgment and/or fund a settlement of the claims alleged against Defendant. Based on these discussions, the parties began to explore potential resolutions for the Action's and the *Acosta* Action's claims against Defendant.

R.     Defendant's counsel has represented to and Defendant has provided a sworn statement to Lead Plaintiff and Lead Counsel stating that Defendant does not have or had any insurance policies

that may, can, or could provide a source of funds to pay for any judgment entered or settlement reached concerning the claims raised in the Action or the *Acosta* Action.

S.      Based on diligent negotiations by counsel on behalf of Lead Plaintiff and the Class, on one hand, and Defendant, on the other hand, on September 3, 2019 an agreement in principle was reached to resolve the claims against Defendant in the Action and the *Acosta* Action.

T.      This Stipulation confirms the agreement between the Parties and sets forth the terms of the proposed Settlement.

U.      Defendant does not, by entering into this Stipulation or settlement, admit or deny any allegations made in the Action or the *Acosta* Action. Defendant has denied and continues to deny any legal liability to Lead Plaintiff or the Class. Nonetheless, Defendant has determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation to avoid the further expense, inconvenience, and burden of this Action, the distraction and diversion of personnel and resources, and to obtain the conclusive and complete dismissal and/or release of the claims against Defendant in the Action and the Released Claims.

V.      Lead Plaintiff believes that the claims asserted in the Action have merit and that the information developed to date supports the claims asserted.  However, Lead Plaintiff and Lead Counsel recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action through trial and appeals.  They also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Action, as well as the difficulties and delays inherent in such litigation, and the ability of Defendant to withstand a greater judgment. Lead Counsel also is mindful of the inherent problems of proof and the possible defenses to the claims alleged in the Action and the *Acosta* Action.

W.      Based on their evaluation, Lead Plaintiff and Lead Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary benefits upon the Settlement Class and is in the best interests of Lead Plaintiff and the Settlement Class.

**NOW THEREFORE**, without any concession by Lead Plaintiff that the Action or the *Acosta* Action lacks merit, and without any concession by Defendant of any liability or wrongdoing or lack of merit in their defenses, it is hereby **STIPULATED AND AGREED**, by and among the parties to this Stipulation, through their respective attorneys, subject to approval by the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties hereto, all Released Claims as against all Released Parties, shall be fully, finally, and forever compromised, settled, released, discharged, and dismissed with prejudice, and without costs, upon and subject to the following terms and conditions:

## DEFINITIONS

1.      As used in this Stipulation, the following terms shall have the meanings set forth below.  In the event of any inconsistency between any definitions set forth below and any definition in any other document related to the Settlement, the definition set forth below shall control.

(a)     "*Acosta* Action" means the civil action captioned *Acosta v. Desarrolladora Homex et al.*, Case No. 3:17-cv-02163-BEN-WVG, pending in the United States District Court for the Southern District of California before the Honorable John A. Houston, United States District Judge.

(b)     "Action" means the civil action captioned *Tames v. Desarrolladora Homex, S.A.B. de C.V. et al.,* No. 2:17-cv-01416-ADS-ARL, pending in the United States District Court for the Eastern District of New York before the Honorable Arthur D. Spatt, United States District Judge.

(c)     "ADRs" means collectively American Depositary Receipts and American Depositary Shares.

(d)     "Alternative Judgment" means a form of final judgment that may be entered by the Court but in a form other than the form of Judgment provided for in this Stipulation and where none of the Parties hereto elects to terminate this Settlement by reason of such variance.

(e)     "Authorized Claimant" means a Settlement Class Member who submits a valid Proof of Claim and Release form to the Claims Administrator that is accepted for payment.

(f)     "Claims Administrator" means the firm to be retained by Lead Counsel, subject to Court approval, to provide all notices approved by the Court to potential Settlement Class Members, to process proofs of claim, and to administer the Settlement.

(g)     "Class Period" means the period from April 30, 2012 through May 5, 2016, inclusive.

(h)     "Complaint" means the Class Action Complaint for Violation of the Federal Securities Laws filed on March 14, 2017 in the Action.

(i)     "Court" means the United States District Court for the Eastern District of New York.

(j)     "Defendant" means Desarrolladora Homex, S.A.B. de C.V. a/k/a Homex Development Corp. only. The term "Defendant" expressly and specifically excludes any current or former employee of Defendant, including and not limited to de Nicolás, Moctezuma, and Lafarga.

(k)     "Defendant's Counsel" means Sidley Austin LLP.

(l)     "Defendant's Sworn Statement" means the sworn statement of Defendant's Director of Investor Relations, attached hereto as Exhibit C, stating, in part, that Defendant lacks

- 7 -

any insurance policy(ies) or other contractual agreements that can, could, or may provide any source of funds to pay for any judgment or settlement on behalf of any of the claims asserted or that could be asserted against Defendant or any of the Individual Defendants in the Action or the *Acosta* Action.

(m)     "de Nicolás" means Gerardo de Nicolás Gutiérrez, Defendant's former chief executive officer.

(n)     "Effective Date" means the date upon which the Settlement shall have become effective, as set forth in ¶ 36 below.

(o)     "Escrow Account" means the separate escrow account at Signature Bank, a national banking institution, established to receive the Settlement Amount for the benefit of the Settlement Class pursuant to this Stipulation and subject to the jurisdiction of the Court.

(p)     "Escrow Agent" means Angeion Group, LLC.

(q)     "Fee and Expense Application" means Lead Counsel's application for an award of attorneys' fees and payment of litigation expenses incurred in prosecuting the case, including any expenses pursuant to 15 U.S.C. § 78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995.

(r)     "Final," with respect to a court order, including a judgment, means the later of: (i) if there is an appeal from a court order, the date of final affirmance on appeal and the expiration of the time for any further judicial review whether by appeal, reconsideration, or a petition for a *writ of certiorari* and, if *certiorari* is granted, the date of final affirmance of the order following review pursuant to the grant; or (ii) the date of final dismissal of any appeal from the order or the final dismissal of any proceeding on *certiorari* to review the order; or (iii) the expiration of the time for the filing or noticing of any appeal or petition for *certiorari* from the

order (or, if the date for taking an appeal or seeking review of the order shall be extended beyond this time by order of the issuing court, by operation of law or otherwise, or if such extension is requested, the date of expiration of any extension if any appeal or review is not sought), without any such filing or noticing being made.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to the Notice and Administration Expenses, Taxes, the Plan of Allocation of the Net Settlement Fund, the Court's award of attorneys' fees or expenses to Lead Counsel, or any other fees or expenses awarded by the Court, shall not in any way delay or affect the time set forth above for the Judgment or Alternative Judgment to become Final or otherwise preclude the Judgment or Alternative Judgment from becoming Final such that it would have preclusive effect in any subsequent proceeding, and all releases provided by this Stipulation would be binding notwithstanding any such appeal or proceeding seeking subsequent review.

(s)     "Immediate Family Members" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law.

(t)     "Individual Defendants" means de Nicolás, Moctezuma, and Lafarga, and each of their Immediate Family Members and any entities in which they have a controlling interest. The term "Individual Defendants" does not include Defendant, Defendant's parent corporations, subsidiaries, and any other related corporate entities of Defendant; any entity in which Defendant has, or had during the Class Period, a controlling interest (directly or indirectly); and each and all of their respective officers, directors, agents, employees, attorneys, advisors, investment advisors, auditors, accountants, bankers, underwriters, insurers, legal representatives, heirs, successors in interest or assigns, or shareholders, other than de Nicolás, Moctezuma, and Lafarga, regardless of whether such individuals are Immediate Family Members of de Nicolás, Moctezuma, or Lafarga.

(u)    "Judgment" means the proposed judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B.

(v)    "Lafarga" means Ramón Lafarga Batiz, Defendant's former controller and administrative and accounting officer.

(w)    "Lead Counsel" means Levi & Korsinsky, LLP.

(x)    "Lead Plaintiff" means Jose Acosta.

(y)    "Moctezuma" means Carlos Moctezuma Velasco Gerardo, Defendant's former chief financial officer.

(z)    "Net Settlement Fund" means the Settlement Fund less: (i) Court-awarded attorneys' fees and expenses to Lead Counsel; (ii) Notice and Administration Expenses; (iii) Taxes; and (iv) any other fees or expenses approved by the Court.

(aa)    "Notice" means the Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses to be sent to potential Settlement Class Members, which, subject to approval of the Court, shall be substantially in the form attached hereto as Exhibit 1 to Exhibit A hereto.

(bb)    "Notice and Administration Expenses" means all costs, fees, and expenses incurred in connection with providing notice to the Settlement Class and the administration of the Settlement, including but not limited to: (i) providing notice of the proposed Settlement by mail, publication, and other means to potential Settlement Class Members; (ii) receiving and reviewing claims for payment from the Settlement Fund; (iii) applying the Plan of Allocation; (iv) communicating with Persons regarding the proposed Settlement and claims administration process; (v) distributing the proceeds of the Settlement; and (vi) fees related to the Escrow Account, and investment of the Settlement Fund.

(cc)    "Notice and Administration Expenses Amount" means the amount of up to fifty thousand United States Dollars ($50,000) to be paid by Defendant to the Claims Administrator for the payment of Notice and Administration Expenses.

(dd)    "Parties" means the parties to the Stipulation, namely, Lead Plaintiff and Defendant.

(ee)    "Person(s)" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

(ff)    "Plan of Allocation" means the proposed Plan of Allocation for the distribution of the Net Settlement Fund, which, subject to the approval of the Court, shall be substantially in the form described in the Notice.

(gg)    "Preliminary Approval Order" means the Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement, which, subject to the approval of the Court, shall be substantially in the form attached hereto as Exhibit A.

(hh)    "Proof of Claim" or "Claim Form" means the Proof of Claim and Release form for submitting a claim, which, subject to approval of the Court, shall be substantially in the form attached as Exhibit 2 to Exhibit A hereto.

(ii)    "Released Claims" means any and all claims and causes of action of every nature and description, whether known or Unknown Claims (as defined below), contingent or absolute, mature or not mature, discoverable or undiscoverable, liquidated or unliquidated, accrued

or not accrued, including those that are concealed or hidden, regardless of legal or equitable theory and whether arising under federal, state, common, or foreign law, that Lead Plaintiff or any other member of the Settlement Class, in any capacity, (a) asserted in the Action or the *Acosta* Action; or (b) could have asserted in any forum that arise out of, are based upon, or relate to, directly or indirectly, in whole or in part, (1) the allegations, transactions, facts, events, matters, occurrences, representations, omissions, or any other matter whatsoever involved, set forth, referred to, or otherwise related, directly or indirectly, to the allegations in the Action or the *Acosta* action or any disclosures made in connection therewith (including the adequacy or completeness of such disclosures*)*, (2) the purchase, sale, acquisition, retention, disposition, or ownership of Homex ADRs  during the Class Period; or (3) Defendant's and/or its attorneys' defense or settlement of the Action and/or the claims alleged therein.  For the avoidance of doubt, Released Claims do not include: (a) claims to enforce the Settlement or (b) any and all claims that are asserted or may be asserted against the Individual Defendants in the Action or the *Acosta* Action.

(jj)    "Released Parties" means, collectively, each and all of: Defendant; Defendant's parent corporations, subsidiaries, and any other related corporate entities of Defendant; any entity in which any Defendant has, or had during the Class Period, a controlling interest (directly or indirectly); and each and all of their respective officers, directors, agents, employees, attorneys, advisors, investment advisors, auditors, accountants, bankers, underwriters, insurers, legal representatives, heirs, successors in interest or assigns, or shareholders with the sole exceptions of the Individual Defendants. The Released Parties other than the Defendant itself are intended as third party beneficiaries of this Settlement with respect to the release of Released Claims.

(kk)   "SEC" means the United States Securities and Exchange Commission ("SEC").

(ll)   "SEC's Former Officers Action" means the action entitled *Securities and Exchange Commission v. de Nicolás Gutierrez et al.*, 3:17-cv-02086-JAH-JLB, pending in the United States District Court for the Southern District of California before the Honorable John A. Houston, United States District Judge.

(mm)   "SEC's Homex Action" means the completed action entitled *Securities and Exchange Commission v. Desarrolladora Homex, S.A.B. de C.V.*, 3:17-cv-00432-L-WVG (S.D. Cal.).

(nn)   "Settlement" means the resolution of the Action in accordance with the terms and provisions of this Stipulation.

(oo)   "Settlement Amount" means three hundred thousand United States Dollars ($300,000).

(pp)   "Settlement Class" or "Settlement Class Member" means all persons and entities that purchased or acquired the publicly traded American Depositary Receipts of Defendant during the period from April 30, 2012 through May 5, 2016, inclusive, and who were allegedly damaged thereby.   Excluded from the Settlement Class are (i) Defendant; (ii) the Individual Defendants; (iii) Immediate Family Members of the Individual Defendants; (iv) any person who was an officer or director of Defendant during the Class Period; (v) any firm or entity in which Defendant has or had a controlling interest; (vi) the parents or subsidiaries of Defendant; (vii) all Defendant benefit plans that are covered by the Employee Retirement Income Security Act of 1974; (viii) the legal representatives, agents, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such; (ix) the Court presiding over

this action; and (x) any persons or entities who or which exclude themselves by submitting a valid request for exclusion that is accepted by the Court.

(qq)    "Settlement Fund" means the Settlement Amount and any interest earned thereon.

(rr)    "Settlement Hearing" means the hearing to be held by the Court to determine, *inter alia*, whether the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

(ss)    "Stipulation" means this Stipulation and Agreement of Settlement.

(tt)    "Summary Notice" means the Summary Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses for publication, which, subject to approval of the Court, shall be substantially in the form attached as Exhibit 3 to Exhibit A hereto.

(uu)    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants).

(vv)    "Unknown Claims" means any and all Released Claims that Lead Plaintiff or any other Settlement Class Member do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Parties, which if known by him, her, or it might have affected his, her, or its decision(s) with respect to the Settlement, including the decision to object to the terms of the Settlement or to exclude himself, herself, or itself from the Settlement Class.

## SCOPE AND EFFECT OF SETTLEMENT

2.    The obligations incurred pursuant to this Stipulation are (a) subject to approval by the Court and the Judgment, or Alternative Judgment, reflecting such approval becoming Final;

and (b) in full and final disposition of the Action with respect to the Released Parties and any and all Released Claims.

3.    For purposes of this Settlement only, the Parties agree to: (i) certification of the Action as a class action, under Federal Rules of Civil Procedure 23(a) and 23(b)(3); (ii) the appointment of Lead Plaintiff as Class Representative for the Settlement Class; and (iii) the appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Federal Rule of Civil Procedure 23(g).

4.    (a)    By operation of the Judgment or Alternative Judgment, as of the Effective Date, Lead Plaintiff and each and every other Settlement Class Member, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims against each and every one of the Released Parties and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the Released Claims against any and all of the Released Parties.  For avoidance of doubt, upon the Effective Date, Lead Plaintiff shall expressly, and each Settlement Class Member shall be deemed to have, and by operation of the Judgment or Alternative Judgment shall have, to the fullest extent permitted by law, expressly waived and relinquished any and all Released Claims, including all such provisions, rights and benefits conferred by any law of any state or territory of the United States or foreign law, or principle of common law, which is similar, comparable, or equivalent to Cal. Civ. Code § 1542, which provides:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

(b)    Lead Plaintiff, or any and all Settlement Class Members may hereafter discover facts, legal theories, or authorities in addition to or different from those which any of them now knows, suspects, or believes to be true with respect to the Action, the Released Claims, but Lead Plaintiff shall expressly, fully, finally, and forever settle and release, and each Settlement Class Member shall be deemed to have fully, finally, and forever settled and released, and upon the Effective Date and by operation of the Judgment or Alternative Judgment shall have settled and released, fully, finally, and forever, any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  Lead Plaintiff acknowledges, and all Settlement Class Members by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a material element of the Settlement.

(c)    By operation of the Judgment or Alternative Judgment, as of the Effective Date, the Released Parties shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the claims and causes of action arising from or relating to this Action against each and every one of the Lead Plaintiff, Lead Counsel, and each and every other Settlement Class Member and shall forever be barred and enjoined from commencing, instituting, prosecuting, or maintaining any and all of the claims and causes of action arising from or relating to this Action against any and all of the Lead Plaintiff, Lead Counsel, and each and every other Settlement Class Member.

## THE SETTLEMENT CONSIDERATION

5.    In full settlement of the claims asserted in the Action against Defendant and in consideration of the releases specified in ¶ 4 above, all of which the Parties agree are good and valuable consideration, Defendant shall pay the Settlement Amount into the Escrow Account within seven (7) days of the later of (i) the date the Settlement becomes Final, and (ii) Lead Counsel

- 16 -

providing, in writing, to Defendant's Counsel the information necessary to effectuate a transfer of funds to the Escrow Account, including, but not limited to, wire transfer instructions, payment address, and a complete and executed Form W-9 for the Settlement Fund that reflects a valid tax identification number.

6.      In further consideration for the releases specified in ¶ 4, Defendant will pay the Notice and Administration Expenses Amount to the Claims Administrator.

7.      In consideration for the benefits to Lead Plaintiff and the Settlement Class under this Settlement, Lead Plaintiff will file a Notice of Voluntary dismissal with prejudice as to his individual claims and without prejudice to the Settlement Class's claims against Defendant in the *Acosta* Action upon the Settlement becoming Final.

8.      Defendant agrees not to take any position, share any information (unless required by law), or provide any support, financial or otherwise (excepting to the extent Defendant is willing or obligated to indemnify or to pay for any judgments and/or settlement amounts for the Individual Defendants) to the Individual Defendants in defending against Lead Plaintiff's claims and allegations in the Action or the *Acosta* Action.

9.      With the sole exception of Defendant's obligation to pay the Settlement Amount into the Escrow Account as provided for in ¶ 5, Defendant's obligation to pay the Notice and Administration Expenses Amount as provided for in ¶ 6, and Defendant's obligations under ¶ 20, Defendant and Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or determination by Lead Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, calculation, or payment

of any claims asserted against the Settlement Fund; (v) any loss suffered by, or fluctuation in value of, the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund, distributions or other payments from the Escrow Account, or the filing of any federal, state, or local tax returns.

10.    Other than the obligation of Defendant to cause the payment of the Settlement Amount and the Notice and Administration Expenses Amount pursuant to ¶¶ 5–6, Defendant shall have no obligation to make or cause to be made any other payments into the Escrow Account, to the Claims Administrator, or to the Lead Plaintiff, any Settlement Class Member or Lead Counsel in settlement of the Action or pursuant to this Stipulation.

<h2 style="text-align:center"><u>USE AND TAX TREATMENT OF SETTLEMENT FUND</u></h2>

11.    The Settlement Fund shall be used: (i) to pay any Taxes; (ii) to pay any attorneys' fees and expenses of Lead Counsel awarded by the Court; (iii) to pay any other fees and expenses awarded by the Court; and (iv) to pay the claims of Authorized Claimants.  Taxes and fees related to the Escrow Account and investment of the Settlement Fund may be paid by the Escrow Agent as incurred, without further approval of Defendant or further order of the Court.

12.    The Net Settlement Fund shall be distributed to Authorized Claimants as provided in ¶¶ 21-33 hereof.  All funds held in the Escrow Account, and all earnings thereon, shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall have been disbursed or returned, pursuant to the terms of this Stipulation, and/or further order of the Court.  The Escrow Agent shall invest funds in the Escrow Account in instruments backed by the full faith and credit of the United States Government (or a mutual fund invested solely in such instruments), or deposit some or all of the funds in non-interest-bearing transaction account(s) that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") in amounts that are up to the limit of FDIC insurance.  Defendant and

Defendant's Counsel shall have no responsibility for, interest in, or liability whatsoever with respect to investment decisions executed by the Escrow Agent. All investment risks of the Settlement Fund shall be borne solely by the Settlement Fund.

13. After the Settlement Amount has been paid into the Escrow Account, the Parties agree to treat the Settlement Fund as a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. All provisions of this Stipulation shall be interpreted in a manner that is consistent with the Settlement Amount being a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1. In addition, the Escrow Agent shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph 13, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to timely and properly prepare and deliver, or cause to be prepared and delivered, the necessary documentation for signature by all necessary parties, and thereafter take all such actions as may be necessary or appropriate to cause the appropriate filing(s) to timely occur. Consistent with the foregoing:

(a) For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be the Escrow Agent or its successors, who shall timely and properly file, or cause to be filed, all federal, state, or local tax returns and information returns (together, "Tax Returns") necessary or advisable with respect to the earnings on the funds deposited in the Escrow Account (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such Tax Returns (as well as the election described above) shall be consistent with this subparagraph and in all events shall reflect that all Taxes (including any estimated taxes, earnings, or penalties) on the income earned on the

funds deposited in the Escrow Account shall be paid out of such funds as provided in subparagraph (c) of this paragraph 13.

(b)    All Taxes shall be paid out of the Settlement Fund.  In all events, Defendant and Defendant's Counsel shall have no liability or responsibility whatsoever for the Taxes or the filing of any Tax Return or other document with the Internal Revenue Service or any other state or local taxing authority or any expenses associated therewith.  Defendant shall have no liability or responsibility for the Taxes of the Escrow Account with respect to the Settlement Amount nor the filing of any Tax Returns or other documents with the Internal Revenue Service or any other taxing authority.  In the event any Taxes are owed by the Defendant on any earnings on the funds on deposit in the Escrow Account, such amounts shall also be paid out of the Settlement Fund.

(c)    Taxes with respect to the Settlement Amount and the Escrow Account shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid, or caused to be paid, by the Escrow Agent out of the Settlement Fund without prior order from the Court or approval by Defendant. The Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas. Reg. § 1.468B-2(l)(2)).  The Parties agree to cooperate with each other, and their tax attorneys and accountants to the extent reasonably necessary, to carry out the provisions of this paragraph 13.

(d)    This is not a claims-made settlement.  As of the Effective Date, Defendant, and/or any other Person funding the Settlement on a Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.

## ATTORNEYS' FEES AND EXPENSES

14.     Lead Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of expenses incurred in prosecuting the Action and the *Acosta* Action, including any earnings on such amounts at the same rate and for the same periods as earned by the Settlement Fund.  Lead Counsel will not apply to the court presiding over the *Acosta* action for an award of fees or costs. Defendant shall take no position with respect to any Fee and Expense Application.

15.     The amount of attorneys' fees and expenses awarded by the Court is within the sole discretion of the Court.  Any attorneys' fees and expenses awarded by the Court, to Lead Counsel or to any other Person, shall be paid from the Settlement Fund within five (5) business days of Defendant's payment of the Settlement Amount into the Escrow Account.

16.     With the sole exception of Defendant's obligation to cause the payment of the Settlement Amount into the Escrow Account and the Notice and Administration Expense to the Claims Administrator, as provided for in ¶¶ 5-6, Defendant shall have no responsibility for, and no liability whatsoever with respect to, any payment whatsoever to Lead Counsel in the Action, or to any other Person to whom an award of fees or expenses may be made, that may occur at any time.

17.     Defendant shall have no responsibility for, and no liability whatsoever with respect to, any allocation of any attorneys' fees or expenses to Lead Counsel in the Action, or to any other Person who may assert some claim thereto, or any fee or expense awards the Court may make in the Action.

18.     Defendant shall have no responsibility for, and no liability whatsoever with respect to, any attorneys' fees, costs, or expenses incurred by or on behalf of Settlement Class Members,

whether or not paid from the Escrow Account.  The Settlement Fund will be the sole source of payment from Defendant for any award of attorneys' fees and expenses ordered by the Court.

19.     The procedures for and the allowance or disallowance by the Court of any Fee and Expense Application are not part of the Settlement set forth in this Stipulation, and any order or proceeding relating to any Fee and Expense Application, including an award of attorneys' fees or expenses in an amount less than the amount requested by Lead Counsel, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation, or affect or delay the finality of the Judgment or Alternative Judgment approving the Stipulation and the Settlement set forth herein, including, but not limited to, the release, discharge, and relinquishment of the Released Claims against the Released Parties, or any other orders entered pursuant to the Stipulation.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶¶ 38-39 or otherwise based on any objection or appeal with respect to fees or expenses awarded in the Action or the Court's or an appellate court's ruling with respect to fees and expenses awarded in the Action.

## NOTICE AND ADMINISTRATION EXPENSES

20.     Without further order of the Court, Defendant shall pay Notice and Administration Expenses reasonably and actually incurred to the Claims Administrator to the extent that the Notice and Administration Expenses do not exceed the Notice and Administration Expenses Amount.   If the Notice and Administration Expenses reasonably and actually incurred exceed the Notice and Administration Expenses Amount, then the excess shall be paid from the Settlement Fund, or by Lead Counsel, or waived by the Claims Administrator.  Under no circumstances shall Defendant be required to pay Notice and Administration Expenses in excess of the Notice and Administration Expenses Amount, except that Defendant shall be responsible for providing any required notice under the Class Action Fairness Act of 2005, if any, at its own expense.

## DISTRIBUTION TO AUTHORIZED CLAIMANTS

21.     The Claims Administrator, subject to such supervision and direction of Lead Counsel and/or the Court as may be necessary or as circumstances may require, shall administer the Settlement in accordance with the terms of this Stipulation, the Court-approved Plan of Allocation, and subject to the jurisdiction of the Court.  Defendant and Defendant's Counsel shall have no responsibility for (except as stated in ¶ 6 hereof), interest in, or liability whatsoever with respect to the administration of the Settlement or the actions or decisions of the Claims Administrator, and shall have no liability to the Settlement Class in connection with such administration.

22.     The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's recognized loss, as defined in the Plan of Allocation included in the Notice, or in such other plan of allocation as the Court may approve.

23.     Defendant has no role in the development of, and will take no position with respect to, the Plan of Allocation.  The Plan of Allocation is a matter separate and apart from the proposed Settlement, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  The Plan of Allocation is not a necessary term of this Stipulation and it is not a condition of this Stipulation that any particular plan of allocation be approved by the Court.   Lead Plaintiff and Lead Counsel may not cancel or terminate the Stipulation or the Settlement in accordance with ¶¶ 38-39 or otherwise based on the Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action.  Defendant and Defendant's Counsel shall have no responsibility or liability for reviewing or challenging claims on the Net Settlement Fund, the allocation of the Net Settlement Fund, or the distribution of the Net Settlement Fund.

24.     Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants.

25.     If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution of the Net Settlement Fund, the Claims Administrator shall, after determining in consultation with Lead Counsel that a further distribution is feasible and economical after payment of Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, redistribute such balance among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  Once it is no longer feasible or economical to make further distributions, any balance that still remains in the Net Settlement Fund after re-distribution(s) and after payment of outstanding Notice and Administration Expenses, Taxes, and attorneys' fees and expenses, if any, shall be contributed to a non-profit and non-sectarian organization(s) approved by the Court.

## ADMINISTRATION OF THE SETTLEMENT

26.     Any Settlement Class Member who fails to submit a valid Proof of Claim (substantially in the form of Exhibit 2 to Exhibit A) will not be entitled to receive any of the proceeds from the Net Settlement Fund, except as otherwise ordered by the Court, but will otherwise be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment to be entered in the Action and all releases provided for herein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

27.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund by the Claims Administrator. Lead Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Lead Counsel deem to be *de minimis* or formal or technical defects in any Proof of Claim submitted. Defendant and Defendant's Counsel shall have no liability, obligation or responsibility for the administration of the Settlement, the allocation of the Net Settlement Fund, or the reviewing or challenging claims on the Net Settlement Fund. Lead Counsel shall be solely responsible for designating the Claims Administrator, subject to approval by the Court.

28.     For purposes of determining the extent, if any, to which a claimant shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each claimant shall be required to submit a Proof of Claim, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Proofs of Claim must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Lead Counsel in their discretion or by Order of the Court. Any Settlement Class Member who fails to submit a Proof of Claim by such date shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless, by Order of the Court or the discretion of Lead Counsel, late-filed Proofs of Claim are accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment and all releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any

Released Party concerning the Released Claims.  A Proof of Claim shall be deemed to be submitted when mailed, if received with a postmark on the envelope and if mailed by first-class or overnight U.S. Mail and addressed in accordance with the instructions thereon.  In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

(c)      Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, which shall determine in accordance with this Stipulation the extent, if any, to which each claim shall be allowed;

(d)      Proofs of Claim that do not meet the submission requirements may be rejected.  Prior to rejecting a Proof of Claim in whole or in part, the Claims Administrator shall communicate with the claimant in writing to give the claimant the chance to remedy any curable deficiencies in the Proof of Claim submitted.  The Claims Administrator, under supervision of Lead Counsel, shall notify, in writing, all claimants whose claims the Claims Administrator proposes to reject in whole or in part for curable deficiencies, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)      If any claimant whose timely claim has been rejected in whole or in part for curable deficiency desires to contest such rejection, the claimant must, within twenty (20) calendar days after the date of mailing of the notice required in subparagraph (d) above, or a lesser period of time if the claim was untimely, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim

cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

29.     Each claimant who submits a Proof of Claim shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, including but not limited to, all releases provided for herein and in the Judgment or Alternative Judgment, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to the claimant's status as a Settlement Class Member and the validity and amount of the claimant's claim.  In connection with processing the Proofs of Claim, no discovery shall be allowed on the merits of the Action or the Settlement.

30.     Payment pursuant to the Stipulation and Court-approved Plan of Allocation shall be deemed final and conclusive against any and all claimants.  All Settlement Class Members whose claims are not approved shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment or Alternative Judgment to be entered in the Action and the releases provided for herein and therein, and will be barred from bringing any action against the Released Parties concerning the Released Claims.

31.     All proceedings with respect to the administration, processing and determination of claims described by this Stipulation and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court, but shall not in any event delay or affect the finality of the Judgment or Alternative Judgment.

32.     No Person shall have any claim of any kind against the Released Parties or Defendant's Counsel with respect to the matters set forth in this section (*i.e.*, ¶¶ 26-33) or any of

its subsections, or otherwise related in any way to the administration of the Settlement, including without limitation the processing of claims and distributions.

33.    No Person shall have any claim against Lead Plaintiff, Lead Counsel, or the Claims Administrator, or other agent designated by Lead Counsel, based on the distributions made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

## TERMS OF THE PRELIMINARY APPROVAL ORDER

34.    Concurrently with their application for preliminary approval by the Court of the Settlement contemplated by this Stipulation and promptly upon execution of this Stipulation, Lead Counsel shall apply to the Court for entry of the Preliminary Approval Order, which shall be substantially in the form annexed hereto as Exhibit A.  The Preliminary Approval Order will, *inter alia*, preliminarily approve the Settlement, set the date for the Settlement Hearing, approve the form of notice, and prescribe the method for giving notice of the Settlement to the Settlement Class.

## TERMS OF THE JUDGMENT

35.    If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendant's Counsel shall jointly request that the Court enter a Judgment substantially in the form annexed hereto as Exhibit B.

## EFFECTIVE DATE OF SETTLEMENT

36.    The Effective Date of this Settlement shall be the first business day on which all of the following shall have occurred or been waived:

(a)    No party has elected terminate the Settlement as permitted by this Stipulation;

(b)      entry of the Preliminary Approval Order, which shall be in all material respects substantially in the form set forth in Exhibit A annexed hereto;

(c)      approval by the Court of the Settlement, following notice to the Settlement Class and the Settlement Hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure; and

(d)      a Judgment, which shall be in all material respects substantially in the form set forth in Exhibit B annexed hereto, has been entered by the Court and has become Final; or in the event that an Alternative Judgment has been entered, the Alternative Judgment has become Final; and

(e)      payment of the Settlement Amount into the Escrow Account.

## WAIVER OR TERMINATION

37.      Defendant and Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of their election to do so ("Termination Notice"), through counsel, to all other Parties hereto within fourteen (14) calendar days of: (i) the Court's Final refusal to enter the Preliminary Approval Order in any material respect; (ii) the Court's Final refusal to approve this Stipulation or any material part of it; (iii) the Court's Final refusal to enter (a) the Judgment in any material respect or (b) an Alternative Judgment; or (iv) the date upon which the Judgment or Alternative Judgment is modified or reversed in any material respect by a Final order of the Court, the United States Court of Appeals, or the Supreme Court of the United States.  For the avoidance of doubt, Lead Plaintiff shall not have the right to terminate the Settlement due to any decision, ruling, or order respecting the Fee and Expense Application or any plan of allocation.

38.      Lead Plaintiff shall have the right to terminate the Settlement and this Stipulation by providing written notice of his election to do so, through counsel, to all other Parties hereto

within fourteen (14) calendar days if Lead Plaintiff becomes aware of any evidence that supports that Defendant has or had any available insurance policies that could reasonably serve as a source of funds to pay any judgment or settlement regarding the claims alleged in the Action or the *Acosta* Action in contradiction to the content of Defendant's Sworn Statement.

39.     In addition to the foregoing, Defendant shall also have the right to terminate the Settlement in the event the Termination Threshold (defined below) has been reached.

(a)     Simultaneously herewith, Defendant's Counsel and Lead Counsel are executing a confidential Supplemental Agreement Regarding Requests for Exclusion ("Supplemental Agreement").  The Supplemental Agreement sets forth certain conditions under which Defendant shall have the sole option to terminate the Settlement and render this Stipulation null and void in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon criteria (the "Termination Threshold").   The Parties agree to maintain the confidentiality of the Supplemental Agreement, which shall not be filed with the Court unless a dispute arises as to its terms, or as otherwise ordered by the Court, nor shall the Supplemental Agreement otherwise be disclosed unless ordered by the Court.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, the Parties will undertake to have the Termination Threshold submitted to the Court *in camera* or under seal. In the event of a termination of this Settlement pursuant to the Supplemental Agreement, this Stipulation shall become null and void and of no further force and effect, with the exception of the provisions of ¶¶ 44-47 which shall continue to apply.

40.     The Preliminary Approval Order, attached hereto as Exhibit A, shall provide that requests for exclusion shall be received no later than twenty-one (21) calendar days prior to the Settlement Hearing.   Upon receiving any request for exclusion pursuant to the Notice, Lead

Counsel shall promptly, and certainly no later than five (5) calendar days after receiving a request for exclusion or fifteen (15) calendar days prior to the Settlement Hearing, whichever is earlier, notify Defendant's Counsel by email of such request for exclusion and provide copies of such request for exclusion and any documentation accompanying it.

41.    In addition to all of the rights and remedies that Lead Plaintiff has under the terms of this Stipulation, Lead Plaintiff shall also have the right to terminate the Settlement in the event that the Settlement Amount or Notice and Administration Expenses reasonably and actually incurred (up to the Notice and Administration Expenses Amount) has not been paid by providing written notice of the election to terminate to all other Parties and, thereafter, if there is a failure to pay the Settlement Amount within fourteen (14) calendar days of such written notice.

42.    If an option to withdraw from and terminate this Stipulation and Settlement arises under any of ¶¶ 37-41 above: (i) neither Defendant nor Lead Plaintiff (as the case may be) will be required for any reason or under any circumstance to exercise that option; and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of Defendant or Lead Plaintiff, as applicable.

43.    With the exception of the provisions of ¶¶ 43-45, which shall continue to apply, in the event the Settlement is terminated as set forth herein or cannot become effective for any reason, then the Settlement shall be without prejudice, and none of its terms shall be effective or enforceable except as specifically provided herein; the Parties shall be deemed to have reverted to their respective litigation positions in the Action on September 3, 2019; and, except as specifically provided herein, the Parties shall proceed in all respects as if this Stipulation and any related order had not been entered.  In such event, this Stipulation, and any aspect of the discussions or negotiations leading to this Stipulation shall not be admissible in this Action and the *Acosta* Action

and shall not be used against or to the prejudice of Defendant or against or to the prejudice of Lead Plaintiff, in any court filing, deposition, at trial, or otherwise, and any judgment or order entered by the Court in accordance with the terms of this Stipulation, including any order or judgment certifying the Settlement Class, shall be treated as vacated *nunc pro tunc*.

## NO ADMISSION

44.     Except as set forth in ¶ 45 below, this Stipulation, whether or not consummated, and whether or not approved by the Court, and any discussion, negotiation, proceeding, or agreement relating to the Stipulation, the Settlement, and any matter arising in connection with settlement discussions or negotiations, proceedings, or agreements, shall not be offered or received against or to the prejudice of any of the Parties or their respective counsel, for any purpose other than in an action to enforce the terms hereof, and in particular:

(a)     do not constitute, and shall not be offered or received against or to the prejudice of the Defendant or the Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by the Defendant or the Released Parties with respect to the truth of any allegation by Lead Plaintiff and the Settlement Class, or the validity of any claim that has been or could have been asserted in the Action, the *Acosta* Action, or in any litigation, including but not limited to the Released Claims, or of any liability, damages, negligence, fault or wrongdoing of Defendant or any person or entity whatsoever;

(b)     do not constitute, and shall not be offered or received against or to the prejudice of the Defendant or the Released Parties as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Defendant, or against or to the prejudice of Lead Plaintiff, or any other member of the Settlement Class, as evidence of any infirmity in the claims of Lead Plaintiff, or the other members of the Settlement Class;

(c)    do not constitute, and shall not be offered or received against or to the prejudice of the Defendant or the Released Parties, Lead Plaintiff, any other member of the Settlement Class, or their respective counsel, as evidence of a presumption, concession, or admission with respect to any liability, damages, negligence, fault, infirmity, or wrongdoing, or in any way referred to for any other reason against or to the prejudice of the Defendant or the Released Parties, Lead Plaintiff, other members of the Settlement Class, or their respective counsel, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(d)    do not constitute, and shall not be construed against the Defendant or the Released Parties, Lead Plaintiff, or any other member of the Settlement Class, as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered after trial in the Action or the *Acosta* Action; and

(e)    do not constitute, and shall not be construed as or received in evidence as an admission, concession, or presumption against Lead Plaintiff, or any other member of the Settlement Class that any of their claims are without merit or infirm or that damages recoverable under the Complaint or in the *Acosta* Action would not have exceeded the Settlement Amount.

45.    Notwithstanding ¶ 44 above, the Parties, and their respective counsel, may file this Stipulation and/or the Judgment or Alternative Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, statute of limitations, statute of repose, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim, or to effectuate any liability protection granted them under any applicable insurance policy.  The Parties may file this Stipulation and/or the Judgment or Alternative Judgment in any action that

may be brought to enforce the terms of this Stipulation and/or the Judgment or Alternative Judgment. All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement.

## MISCELLANEOUS PROVISIONS

46.     All of the exhibits to the Stipulation, except any plan of allocation to the extent incorporated in those exhibits, and the Supplemental Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

47.     The Parties intend the Settlement to be the full, final, and complete resolution of all claims asserted or that could have been asserted by the Parties with respect to the Released Claims. Accordingly, the Parties agree not to assert in any forum that the Action was brought, prosecuted, or defended in bad faith or without a reasonable basis. The Parties shall not assert or pursue any action alleging that any other Party or its counsel has violated Rule 11 of the Federal Rules of Civil Procedure in connection with the maintenance, prosecution, defense, and settlement of the Action and shall not make any application for sanctions, pursuant to Rule 11 or other court rule or statute, with respect to any claim or defense in this Action. The Parties agree that the amount paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties and their respective counsel and reflect a settlement that was reached voluntarily based upon adequate information and after consultation with experienced legal counsel.

48.     This Stipulation, along with its exhibits and the Supplemental Agreement, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by counsel for the Parties hereto, or their successors.

49.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

50.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and any expenses, and implementing and enforcing the terms of this Stipulation.

51.     Any failure by one Party to insist on the strict performance by any other party of any provision of this Stipulation shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

52.     This Stipulation, its exhibits, and the Supplemental Agreement constitute the entire agreement among the Parties concerning the Settlement as against the Defendant, and no representation, warranty, or inducement has been made by any Party concerning this Stipulation and its exhibits other than those contained and memorialized in such documents and in Defendant's Sworn Statement.

53.     Nothing in the Stipulation, or the negotiations relating thereto, is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, attorney-client privilege, joint defense privilege, or work product protection.

54.     Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

55.     All agreements by, between, or among the Parties and their counsel as to the confidentiality of information exchanged between or among them shall remain in in full force and effect and any designations made, or orders entered, during the course of the Action relating to the confidentiality of documents or information shall survive the execution and any termination of this Stipulation and the final consummation of the Settlement, if finally consummated, without regard to any of the conditions of the Settlement.

56.     This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  Signatures sent by facsimile or via e-mail in pdf format shall be deemed originals.

57.     This Stipulation shall be binding when signed, but the Settlement shall be effective upon the entry of the Judgment or Alternative Judgment and the payment in full of the Settlement Amount, subject only to the condition that the Effective Date will have occurred.

58.     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties.

59.     The construction, interpretation, operation, effect, and validity of this Stipulation, and all documents necessary to effectuate it, shall be governed by the laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law governs.

60.     This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations among the Parties, and all Parties have contributed substantially and materially to the preparation of this Stipulation.

61.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement document, warrant and represent that they have the full authority to do so, and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

62.     The Parties and their respective counsel agree to cooperate fully with one another in promptly applying for preliminary approval by the Court of the Settlement and for the scheduling of a hearing for consideration of Final approval of the Settlement and Lead Counsel's

Fee and Expense Application, and to agree promptly upon and execute all such other documentation as reasonably may be required to obtain Final approval by the Court of the Settlement.

63.    Except as otherwise provided herein, each Party shall bear its own costs.

**IN WITNESS WHEREOF**, the Parties have caused this Stipulation to be executed, by their duly authorized attorneys, as of May 5, 2020.


**LEVI & KORSINSKY, LLP**

By: _____
    Nicholas I. Porritt
    Adam M. Apton
    55 Broadway, 10th Floor
    New York, New York 10006
    Telephone: (212) 363-7500
    Facsimile: (212) 363-7171
    nporritt@zlk.com
    aapton@zlk.com

    *Attorneys for Lead Plaintiff  Jose Acosta*


**SIDLEY AUSTIN LLP**

By: ___/s/ Hille R. Sheppard___
    Hille R. Sheppard
    One South Dearborn
    Chicago, IL 60603
    Telephone: (312) 853-7850
    hsheppard@sidley.com

    *Attorneys for Defendant Desarrolladora Homex,*
    *S.A.B. de C.V.*


- 37 -