**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAVIER TAMES, individually and on behalf of all others similarly situated, | Case No.:  2:17-cv-01416-JMA-ARL |
| Plaintiff, | Hon. Judge Joan M. Azrack |
| v. | Hon. Magistrate Judge Arlene R. Lindsay |
| DESARROLLADORA HOMEX, S.A.B. DE C.V. a/k/a HOMEX DEVELOPMENT CORP., GERARDO DE NICOLÁS GUTIÉRREZ, and CARLOS MOCTEZUMA VELASCO, | |
| Defendant. | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

Nicholas I. Porritt
Adam M. Apton
LEVI & KORSINSKY, LLP
55 Broadway 10th Floor
New York, NY 10006
Telephone:  212-363-7500
Facsimile:  212-363-7171

*Attorneys for Lead Plaintiff Jose Acosta and Lead Counsel for the Proposed Class*

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................1

II. ARGUMENT ...............................................................................................2

    A.    Lead Counsel Is Entitled to An Award of Attorneys' Fees. ......... 2

    B.    The Requested Attorney's Fees Are Reasonable under the Percentage-Of-The-Fund Method. ................................................. 3

    C.    A Review of the *Goldberger* Factors Confirms that the Requested 28.6% Fee Is Fair and Reasonable. ................................................. 4

        1.    The Time and Labor Expended by Lead Counsel Support the Requested Fee. ........................................................... 5

        2.    The Magnitude and Complexity of the Action Support the Requested Fee. ................................................................. 5

        3.    The Risks of the Litigation Support the Requested Fee. .. 6

        4.    The Quality of Lead Counsel's Representation Supports the Requested Fee. ........................................................... 8

        5.    Second Circuit Precedent Supports the 28.6% Fee as a Reasonable Percentage of the Total Recovery.................. 9

        6.    Public Policy Consideration Supports the Requested Fee 9

        7.    Plaintiffs' Approval and The Settlement Class' Reaction Support The Requested Fee. ............................................. 9

    D.    A Lodestar Cross-Check Confirms the Reasonableness of The Fee Request,............................................................................. 10

E.      Lead Counsel's Litigation Expenses Are Reasonable and Should

Be Approved for Reimbursement. ............................................... 12

**III.   CONCLUSION** ........................................................................................................**13**

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*,

    No. 03 MDL 1529, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006)........................................ 8

*Am. Bank Note Holographics*,

    127 F. Supp. 2d .......................................................................................................................... 7

*In re Am. Int'l Grp, Inc.*

    *2008 Sec. Litig.,* No. 08-cv- 4772 (S.D.N.Y.) ........................................................................ 3

*Anwar v. Fairfield Greenwich Ltd.*,

    No. 09-CV-118 VM, 2012 WL 1981505 (S.D.N.Y. June 1, 2012)..................................... 11

*In re AremisSoft Corp. Sec. Litig.*,

    210 F.R.D. 109 (D.N.J. 2002).............................................................................................. 11

*In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*,

    772 F.3d 125 (2d Cir. 2014) .............................................................................................. 3, 5

*Bateman Eichler, Hill Richards, Inc. v. Berner*,

    472 U.S. 299 (1985).............................................................................................................. 2

*In re Bear Stearns Mortg. Pass-Through Certificates Litig.*,

    No. 1:08-cv- 08093 (S.D.N.Y.) ......................................................................................... 11

*Becher v. Long Island Lighting Co.*,

    64 F.Supp.2d 174 (E.D.N.Y.1999) ...................................................................................... 4

*Blum v. Stenson*,

    465 U.S. 886 (1984).............................................................................................................. 4

*Boeing Co. v. Van Gemert*,

    444 U.S. 472 (1980) ................................................................................. 2

*Buccellato v. AT & T Operations, Inc.*,

    No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ................................ 12

*In re China Sunergy Sec. Litig.*,

    No. 07 Civ. 7895, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................ 12

*City of Detroit v. Grinnell Corp.*,

    495 F.2d 448 (2d Cir. 1974) ................................................................... 6

*In re Comverse Tech., Inc. Sec. Litig.*,

    No. 06-CV-1825, 2010 WL 2653354 (E.D.N.Y. June 24, 2010) ............................ 3, 6, 9, 10

*Craft v. Cty. of San Bernardino*,

    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................ 12

*Davis v. J.P. Morgan Chase & Co.*,

    827 F. Supp. 2d 172, 183-85 (W.D.N.Y.) 2011 ...................................... 3

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,

    586 F. Supp. 2d 732 (S.D. Tex. 2008) ................................................ 12

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,

    No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ........................ 4

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,

    No. 02-cv-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ...................... 5, 7, 9, 10

*Flores v. Anjost Corp.*,

    No. 11 Civ. 1531, 2014 WL 321831 (S.D.N.Y. Jan. 29, 2014) ........................ 3, 4

*In re Giant Interactive Grp., Inc. Sec. Litig.*,

279 F.R.D. 151 (S.D.N.Y. 2011) .................................................................... 2

*In re Global Crossing Sec. and ERISA Litig.*,

225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................... 8

*Goldberger v. Integrated Res., Inc.*,

209 F.3d 43 (2d Cir. 2000) ................................................................... passim

*Hayes v. Harmony Gold Mining Co.*,

No. 08 Civ. 03653, 2011 WL 6019219 (S.D.N.Y. Dec. 2, 2011) .......................... 4

*Hicks v. Morgan Stanley*,

No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ......................... 2

*In re IMAX Sec. Litig.*,

No. 06 CIV. 6128 NRB, 2012 WL 3133476 (S.D.N.Y. Aug.1, 2012) .................... 4

*J.I. Case Co. v. Borak*,

377 U.S. 426 (1964) ....................................................................................... 2

*Khait v. Whirlpool Corp.*,

No. 06-cv-6381, 2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ........................ 3, 4

*In re Marsh ERISA Litig.*,

265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................... 7

*In re Metlife Demutualization Litig.*,

689 F. Supp. 2d 297 (E.D.N.Y. 2010) .............................................................. 7

*Missouri v. Jenkins*,

491 U.S. 274 (1989) .................................................................................. 4, 11

*MissPERS v. Goldman Sachs Grp., Inc.*,

    No. 09-cv-1110 (S.D.N.Y.) ............................................................................ 11

*Monzon v. 103W77 Partners, LLC*,

    No. 13 Civ. 5951, 2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ................................ 3

*In re Morgan Stanley Mortgage Pass-Through Certificates Litig.*,

    No. 09-cv-2137 (S.D.N.Y.) ............................................................................ 11

*In re PaineWebber Ltd. P'Ships Litig.*,

    171 F.R.D. 104 (S.D.N.Y. 1997) .................................................................... 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

    991 F. Supp. 2d 437 (E.D.N.Y. 2014) ........................................................ 3, 10

*Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance*

    *Corp. I*,

    No. 08-cv-1713 (E.D.N.Y.) ............................................................................ 11

*In re Rite Aid Corp. Sec. Litig.*,

    146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5) .............................. 12

*In re RJR Nabisco, Inc. Sec. Litig.*,

    No. 818 (MBM), 1992 WL 210138 (S.D.N.Y. Aug. 24, 1992) ............................ 11

*Roberts v. Texaco, Inc.*,

    979 F. Supp. 185 (S.D.N.Y. 1997) .................................................................. 12

*Savoie v. Merchs. Bank*,

    166 F.3d 456 (2d Cir. 1999) ............................................................................ 3

*Sewell v. Bovis Lend Lease, Inc.*,

    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012) ............................ 3

*In re SMART Techs., Inc. S'holder Litig.*,

    No. 11-CV-7673 (S.D.N.Y.) ...................................................................................... 11

*Steinver v. Am. Broad Co.*,

    248 F. App'x 780 (9th Cir. 2007) .......................................................................... 12

*In re Sumitomo Copper Litig.*,

    189 F.R.D. 274 (S.D.N.Y. 1999) .............................................................................. 5

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,

    No. 01-CV-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ........................... 8

*In re Telik, Inc. Sec. Litig.*,

    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ..................................................................... 2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

    551 U.S. 308 (2007) ................................................................................................. 2

*In re The Reserve Primary Fund Sec. & Derivative Class Action Litig.*,

    No. 08-cv-8060 (S.D.N.Y.) ...................................................................................... 11

*In re Tower Group Int'l, Ltd. Sec. Litig.*,

    No. 13-cv-5852 (S.D.N.Y.) ...................................................................................... 11

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,

    724 F. Supp. 160 (S.D.N.Y. 1989) ......................................................................... 11

*Van Vranken v. Atlantic Richfield Co.*,

    901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................... 12

*In re Veeco Instruments Inc. Sec. Litig.*,

    No. 05 MDL 01695, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................ 2, 7, 8, 11

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,

  396 F.3d 96 (2d Cir. 2005) ...................................................................................... 3

## I.    INTRODUCTION

Court-appointed Lead Counsel Levi & Korsinsky,[1] having recovered $300,000 in cash plus up to an additional $50,000 for payment of Notice and Administration Expenses in the Settlement against Homex only,[2] respectfully applies for an award of attorneys' fees in the amount of $100,000 (28.6% of the total benefit to the Class including the $50,000 for Notice and Administration Expenses). Lead Counsel also seeks $30,892.32 for reimbursement of Lead Counsel's litigation expenses reasonably and necessarily incurred to prosecute the Action.

Throughout the litigation, the stakes have been large and the risks substantial. The likelihood of succeeding, and then recovering, was highly uncertain. Lead Counsel nevertheless undertook this representation on a contingency basis, with no guarantee of success or recovery. Lead Counsel faced substantial risks establishing liability, defeating defenses, and proving the amount of damages. Lead Plaintiff and Lead Counsel succeeded, however. The $300,000 won through this Action is a fair result for a securities fraud class action settlement in light of the risks that further litigation would have resulted in no recovery for the Class.

Proof of this is evident in the fact that Homex has very few assets and no insurance policy to fund any settlement or judgment. *See* Declaration of Adam M. Apton dated May 14, 2020 ("Apton Declaration" or "Apton Decl."), Dkt. No. 24-2, ¶¶11, 19-20. Moreover, approximately 10,857 notices have been disseminated to the public detailing the terms of the Settlement and Lead Counsel's intent to seek a payment of $100,000 in attorneys' fees, up to $40,000 in reimbursement of expenses. To date, there have been no objections to the Settlement or the requested payments to Lead Plaintiff and Lead Counsel.

Lead Counsel should be rewarded for its hard work and commitment to the litigation. Accordingly, they respectfully request that their motion for attorneys' fees and expenses be granted in its entirety.

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation of Settlement dated May 5, 2020 (ECF No. 23, the "Stipulation" or the "Stip.").
[2] The Settlement is with Defendant Homex only. Lead Plaintiff continues to pursue the claims against the Individual Defendants named in the Action and the *Acosta* Action.

## II.    ARGUMENT

### A.    <u>Lead Counsel Is Entitled to An Award of Attorneys' Fees.</u>

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Courts recognize that awards of fair attorneys' fees from a common fund "serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and therefore to discourage future alleged misconduct of a similar nature. *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 585 (S.D.N.Y. 2008); *see In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115808, at *2 (S.D.N.Y. Nov. 7, 2007) (same); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 165 (S.D.N.Y. 2011) (an award of appropriate attorneys' fees should "provid[e] lawyers with sufficient incentive to bring common fund cases that serve the public interest" and "attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so") (citations omitted). The Supreme Court has emphasized that private securities actions, such as this one, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (private securities actions provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'") (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

Most courts have found that the percentage-of-the-fund method, under which counsel is awarded a percentage of the fund that it recovered, is the preferred means to determine a fee

because it "directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate the attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77 Partners, LLC*, No. 13 Civ. 5951, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015) (citing *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *10 (S.D.N.Y. Apr. 16, 2012) ("[The percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded.")); *see Khait v. Whirlpool Corp.,* No. 06-cv-6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (Carter, J.).

The Second Circuit has expressly approved the percentage method, recognizing that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources."[3] The Second Circuit, and Courts within this District, have acknowledged that the "trend in this Circuit is toward the percentage method." *Whirlpool,* 2010 WL 2025106, at *8.[4]

### B. The Requested Attorney's Fees Are Reasonable under the Percentage-Of-The-Fund Method.

The Supreme Court has recognized that an appropriate court-awarded fee is intended to approximate what counsel would receive if they were bargaining for the services in the

---

[3] *Goldberger*, 209 F.3d at 48-50 (holding that either the percentage-of-the-fund method or lodestar method may be used to determine appropriate attorneys' fees); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.* ("*BofA*"), 772 F.3d 125, 134 (2d Cir. 2014) (affirming award, over objections, of attorneys' fees equaling over 6% of $2.425 billion settlement fund); *Savoie v. Merchs. Bank*, 166 F.3d 456, 460 (2d Cir. 1999) (the "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases").

[4] *See also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *Davis v. J.P. Morgan Chase & Co.,* 827 F. Supp. 2d 172, 183-85 (W.D.N.Y. 2011); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014) ("The trend in this Circuit, and the method I adopt here, is a percentage of the fund."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2010 WL 2653354, at *2 (E.D.N.Y. June 24, 2010); *In re Am. Int'l Grp, Inc. 2008 Sec. Litig.,* No. 08-cv- 4772 (S.D.N.Y.), Order filed March 20, 2015 (Dkt. No. 517); *Flores v. Anjost Corp.*, No. 11 Civ. 1531, 2014 WL 321831, at *8 (S.D.N.Y. Jan. 29, 2014) ("The trend in this Circuit is to use the percentage of the fund method to compensate attorneys in common fund cases like this one.").

marketplace. *See Missouri v. Jenkins*, 491 U.S. 274, 285-86 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 33% of the recovery. *See Blum v. Stenson*, 465 U.S. 886, 903-04 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring). Moreover, at 28.6%, the requested fee is less than the percentage fee awards granted in many other comparable securities class actions within the Second Circuit.[5]

The requested 28.6% fee is also well within the range of percentage fees awarded in other, non-securities, complex class actions within the Second Circuit further confirming the reasonableness of the requested 28.6% award. *See, e.g., Whirlpool,* 2010 WL 2025106, at *8 (Carter, J.) (awarding fees of 33% of $9.25 million settlement fund in FLSA case; "Class Counsel's request for 33% of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit"; citing other awards of 33%); *Flores*, 2014 WL 321831, at *8 (awarding fees of 1/3 of settlement amount in wage-and-hour case); *Davis*, 827 F. Supp. 2d at 185-86 (awarding fees of 1/3 of $42 million settlement fund in wage-and-hour case).

### C.   A Review of the *Goldberger* Factors Confirms that the Requested 28.6% Fee Is Fair and Reasonable.

The appropriate criteria for courts within the Second Circuit to consider when reviewing a request for attorneys' fees in a common-fund case include the "*Goldberger*" factors:

---

[5] *See, e.g., In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *11 (S.D.N.Y. Nov. 9, 2015), *aff'd sub nom. In re Facebook, Inc.*, 674 F. App'x 37 (2d Cir. 2016) (awarding 33% of total Settlement); *In re IMAX Sec. Litig.*, No. 06 CIV. 6128 NRB, 2012 WL 3133476, at *7 (S.D.N.Y. Aug.1, 2012) (finding an award of 33% of a $12 million settlement reasonable); *Hayes v. Harmony Gold Mining Co.*, No. 08 Civ. 03653, 2011 WL 6019219, at *1 (S.D.N.Y. Dec. 2, 2011) (awarding 33.3% of $9 million settlement fund), *aff'd*, 509 F. App'x 21 (2d Cir. 2013) (unpubl.); *In re Blech Sec. Litig.*, No. 94 CIV. 7696(RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec.4, 2002) (finding an award of 33–1/3% reasonable); *Becher v. Long Island Lighting Co.*, 64 F.Supp.2d 174, 182 (E.D.N.Y.1999) (citations omitted) (A fee award of one-third of the Settlement Fund "is well within the range accepted by courts in this circuit.").

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50 (internal quotes and citation omitted), *cited in BofA*, 772 F.3d at 134 (affirming attorneys' fee award, over objection, that was "based upon an application of the criteria set out in *Goldberger*"). Consideration of these factors demonstrates that the fee requested by Lead Counsel is reasonable.

**1.      The Time and Labor Expended by Lead Counsel Support the Requested Fee.**

The work undertaken by Lead Counsel in prosecuting this complex securities class action and arriving at this Settlement has been time-consuming and challenging. Over the past two years, Lead Counsel, while striving to efficiently and effectively represent the interests of the Settlement Class, dedicated a substantial amount of labor, time, and money to pursue and resolve the claims. The Apton Declaration submitted in connection with Lead Plaintiff's motion for preliminary approval of the Settlement describes the work performed in this Action. *See* Apton Decl., ¶¶6-15.

In total, as set forth in the accompanying declaration of Adam M. Apton, Lead Counsel expended in excess of 431 hours prosecuting the Action and the *Acosta* Action. *See* Supplemental Declaration of Adam M. Apton dated August 12, 2020 ("Apton Supp. Decl."), ¶12. The significant amount of time and effort devoted to this case by Lead Counsel confirms that the fee requested here is reasonable.

**2.      The Magnitude and Complexity of the Action Support the Requested Fee.**

Courts have long recognized that securities class actions are "notably difficult and notoriously uncertain." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02-cv-3400, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). Lead Plaintiff believes that the case has merit and that evidence exists to establish Homex's liability. However, this is a case with a complex fact pattern. Lead Plaintiff recognizes that Homex has denied certain of the material allegations in the Complaint and that it

strongly disputes the central premise of the Complaint. In view of these factors, without a settlement, Lead Plaintiff and the Settlement Class face a very real risk in this case that they could recover far less than the Settlement amount—or even nothing—without the Settlement. In addition, costly expert testimony concerning the materiality of Homex's misstatements, loss causation, damages, and market efficiency would be crucial to Lead Plaintiff's case. In all events, protracted and highly complex further litigation without a reasonably predictable outcome would ensue if this case were not resolved at this time.

Accordingly, the magnitude and complexity of the Action support the conclusion that the requested fee is fair and reasonable.

### 3.   The Risks of the Litigation Support the Requested Fee.

The risk of the litigation is often considered the most important *Goldberger* factor. *See Goldberger,* 209 F.3d at 54; *Comverse*, 2010 WL 2653354, at *5; *Telik,* 576 F. Supp. 2d at 592. The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted), *abrogated on other grounds by Goldberger*, 209 F.3d 43 (2d Cir. 2000). The Court should bear in mind that "[l]ittle about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation." *Comverse*, 2010 WL 2653354, at *5.

Here, the Complaint alleges that Homex perpetrated accounting fraud by recording fictitious home sales and the related revenue in the company's financial statements filed with the SEC. While Lead Counsel believes that the claims have merit, it also recognizes that there were significant risks as to whether it would ultimately be able to prove liability and establish damages, as well as with respect to the amount of damages that could be established. Lead Counsel understands that risks remained in further prosecution of the Action. These risks could have

manifested themselves at any time throughout the remainder of the case. *See* Apton Decl., ¶¶6-15, ¶¶18-21 (discussing risks of litigation); Apton Supp. Decl., ¶¶5-6, 8-9 (same0.

Several of the contested issues, including damages, would ultimately have required expert testimony before the jury. While Lead Counsel expected to present persuasive testimony establishing causation and damages, Homex likely would have presented experts in support of their positions. Lead Counsel could not be certain which experts' views would be credited by the jury, particularly given the complexity of the underlying factual issues, and who would prevail at trial in this "battle of the experts." *See, e.g., In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 332 (E.D.N.Y. 2010) ("The proof on many disputed issues – which involve complex financial concepts – would likely have included a battle of experts, leaving the trier of fact with difficult questions to resolve."); *Am. Bank Note Holographics*, 127 F. Supp. 2d at 426-27 ("In such a battle, Plaintiffs' Counsel recognize the possibility that a jury could be swayed by experts for Defendants.").

Accordingly, the risks faced by Lead Counsel were very real. In the face of these uncertainties, Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require it to devote substantial attorney time and significant litigation expenses with no guarantee of compensation. "There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Veeco*, 2007 WL 4115808, at *6. Class Counsel's assumption of this contingency-fee risk strongly supports the reasonableness of the requested fee. *See FLAG Telecom*, 2010 WL 4537550, at *27 ("the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

4.      **The Quality of Lead Counsel's Representation Supports the Requested Fee.**

The quality of the representation is another important factor that supports the reasonableness of the requested fee. The quality of the representation here is best evidenced by the quality of the result achieved. *See Goldberger,* 209 F.3d at 55; *Veeco*, 2007 WL 4115808, at *7; *In re Global Crossing Sec. and ERISA Litig.,* 225 F.R.D. 436, 467 (S.D.N.Y. 2004). The quality of Lead Counsel's efforts in the litigation, together with Lead Counsel's substantial experience in securities class actions and its commitment to the litigation, provided Lead Counsel with the leverage necessary to negotiate the favorable Settlement. Here, the recovery of $300,000 plus up to an additional $50,000 to pay for Notice and Administration Expenses obtained by Lead Counsel is an excellent result for the Settlement Class in light of the attendant risks of continued litigation discussed above.

The skill and substantial experience of counsel in the specialized field of shareholder securities litigation also support the reasonableness of the requested fee. *See Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 WL 1087261, at *6 (S.D.N.Y. May 14, 2004). Lead Counsel specializes in complex securities litigation, and is highly experienced in such litigation, with a successful track record in securities cases throughout the country. *See* Apton Decl., Exhibit A (Dkt. No. 24-3).

Finally, courts consider the quality of the opposition faced by class counsel when assessing the quality of counsel's performance. *See, e.g., Marsh*, 265 F.R.D. at 148 ("The high quality of defense counsel opposing Plaintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement"); *Veeco*, 2007 WL 4115808, at *7 (among the factors supporting a 30% award of attorneys' fees was that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, No. 03 MDL 1529, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work").

Here, Lead Counsel was opposed by Sidley Austin LLP, a very skilled and highly respected defense firm representing the Defendant. They spared no effort in the defense of their clients. In the face of this knowledgeable and formidable defense, Lead Counsel was nonetheless able to develop a case that was sufficiently strong to persuade the Defendant to settle on terms that are favorable to the Settlement Class.

### 5.    Second Circuit Precedent Supports the 28.6% Fee as a Reasonable Percentage of the Total Recovery.

Courts have interpreted the next factor – the requested fee in relation to the settlement – as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed above, the requested 28.6% fee is well within the range of percentage fees that courts in the Second Circuit, including this Court, and around the country have awarded in class actions. Accordingly, the requested fee is reasonable in relation to the size of the Settlement.

### 6.    Public Policy Consideration Supports the Requested Fee

Public policy strongly favors rewarding firms for bringing successful securities actions like this one. *See FLAG Telecom*, 2010 WL 4537550, at *29 (if the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook"); *Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *Hicks*, 2005 WL 2757792, at *9 ("To make certain that the public is represented by talented and experienced trial counsel, the remuneration should be both fair and rewarding."). Accordingly, public policy favors granting Lead Counsel's fee and expense application here.

### 7.    Plaintiffs' Approval and The Settlement Class' Reaction Support The Requested Fee.

Lead Plaintiff was involved in the prosecution and settlement in this Action, and has approved the requested fee. *See* Declaration of Jose Acosta, Dkt. No. 24-4, ¶¶2-9. The reaction of

the Settlement Class also supports the requested fee. As of August 11, 2020, the Claims Administrator has sent a total of 10,857 Notices to potential Settlement Class Members and their brokers and nominees, informing them that, among other things, Lead Counsel intended to apply to the Court for an award of attorneys' fees in an amount of $100,000 (28.6% of the total benefit to the Class). Supplemental Declaration of Steven R. Platt dated August 11, 2020 ("Platt Supp. Decl."), ¶7. While the time to object to the fee application does not expire until August 26, 2020, to date, there have been no objections. *Id*. at ¶6. Should any potential objections be received, Lead Counsel will address them in its reply papers. The lack of objections from Settlement Class Members strongly demonstrates their approval of the Settlement, and the requested fee award. *See, e.g., Veeco,* 2007 WL 4115809, at *7 ("The lack of objections provides effective evidence of the fairness of the Settlement."); *In re PaineWebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("the absence of objections may itself be taken as evidencing the fairness of a settlement") (citation omitted), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

### D.   A Lodestar Cross-Check Confirms the Reasonableness of The Fee Request,

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, the Second Circuit encourages district courts to cross-check the proposed award against counsel's lodestar. *See Goldberger*, 209 F.3d at 50; *Payment Card Interchange Fee*, 991 F. Supp. 2d at 447-48. In cases like this, fees representing multiples of the lodestar are regularly awarded to reflect the contingency-fee risk and other relevant factors. *See, e.g.*, *FLAG Telecom*, 2010 WL 4537550, at *26 ("Under the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors."); *Comverse*, 2010 WL 2653354, at *5 ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar."). Accordingly, in complex contingent litigation, lodestar multipliers between 2 and 5 are commonly awarded. Indeed, this Court has previously recognized that "[a] multiplier of 2.42 is well within the range of lodestar multipliers approved by courts in the Second Circuit," noting that "multipliers of 3 to 4.5 to be common." *Anwar v. Fairfield*

*Greenwich Ltd*., No. 09-CV-118 VM, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012). Courts within this district have, when warranted, awarded plaintiffs attorneys' fees equal to six (6) times lodestar. *See, e.g.*, *In re RJR Nabisco, Inc. Sec. Litig*., No. 818 (MBM), 1992 WL 210138, at *7–8 (S.D.N.Y. Aug. 24, 1992) (Mukasey, J.) (awarding a percentage-based fee representing 6 times lodestar).[6]

Here, a lodestar cross-check fully supports the requested percentage fee. In this entirely contingent action that raised myriad complex issues, Lead Counsel devoted approximately 431.65 hours of attorney and other professional support time in the prosecution and investigation of the Action and *Acosta* Action. Apton Supp. Decl., ¶12. Lead Counsel's total lodestar, derived by multiplying the hours spent by each attorney and paraprofessional by their current hourly rates, is $288,064.75.[7] *Id.*

---

[6] *See Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *Cornwell v. Credit Suisse Grp.*, No. 08-cv-03758, Dkt. No. 117 (S.D.N.Y. July 18, 2011) (awarding fee representing a multiplier of 4.7); *Telik*, 576 F. Supp. 2d at 590 ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court."); *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 135 (D.N.J. 2002) (a 4.3 multiplier was appropriate in light of the contingency risk and the quality of the result achieved); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country").

[7] Class Counsel's hourly rates are the same as, or comparable to, the rates submitted by my firm for lodestar cross-checks in other securities class action litigation for fee applications that have been granted within this Circuit and nationwide. *See, e.g., In re Tower Group Int'l, Ltd. Sec. Litig.*, No. 13-cv-5852 (S.D.N.Y.) (Dkt. No. 163-8) ("*Tower*"); *In re Bear Stearns Mortg. Pass-Through Certificates Litig*., No. 1:08-cv- 08093 (S.D.N.Y.) (Dkt. No. 273-6); *In re Morgan Stanley Mortgage Pass-Through Certificates Litig*., No. 09-cv-2137 (S.D.N.Y.) (Dkt. No. 328); *Plumbers' & Pipefitters' Local #562 Supplemental Plan & Trust v. J.P. Morgan Acceptance Corp. I*, No. 08-cv-1713 (E.D.N.Y.) (Dkt. No. 222-5) ("*J.P. Morgan*"); *In re SMART Techs., Inc. S'holder Litig.*, No. 11-CV-7673 (S.D.N.Y.) (Dkt. No. 182-4) ("*SMART*"); *In re The Reserve Primary Fund Sec. & Derivative Class Action Litig*., No. 08-cv-8060 (S.D.N.Y.) (Dkt. No. 101-4); *MissPERS v. Goldman Sachs Grp., Inc*., No. 09-cv-1110 (S.D.N.Y.) (Dkt. No. 147-2).

Both the Supreme Court and courts in this Circuit have long approved the use of current hourly rates to calculate the base lodestar figure as a means of compensating for the delay in receiving payment that is inherent in class actions, inflationary losses, and the loss of access to legal and monetary capital that could otherwise have been employed had class counsel been paid on a current basis during the pendency of the litigation. *See In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989); *Veeco*, 2007 WL 4115808, at *9; *Missouri*, 491 U.S. at 284.

The requested fee of $100,000, which represents a multiplier of negative 2.88. Thus, the requested fee is eminently reasonable and supported by a lodestar cross-check.[8] Lead Counsel's requested fee is well within the range of what courts in this Circuit and throughout the country commonly award in complex class actions such as this, when calculated as a percentage of the fund, and pursuant to a lodestar cross-check.

### E.    Lead Counsel's Litigation Expenses Are Reasonable and Should Be Approved for Reimbursement.

Lead Counsel's fee application includes a request for reimbursement of litigation expenses that were reasonably incurred in furtherance of the claims on behalf of the Settlement Class. These expenses are documented expenses properly recovered by counsel. *See, e.g.*, *In re China Sunergy Sec. Litig.,* No. 07 Civ. 7895, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) (in a class action, attorneys should be compensated "for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation'"); *FLAG Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class.").

Lead Counsel requests reimbursement of $30,892.32 in expenses for prosecuting the Action for the benefit of the Settlement Class, to be paid out of the Settlement Amount. The expenses are the types that are necessarily incurred in litigation and routinely charged to clients billed by the hour. These expenses include expert fees, international service filing fees, as well as translation services. *See* Apton Supp. Decl., ¶13.

---

[8] *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation."); *see also Steinver v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding a multiplier of 4.3 was reasonable); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a fee award that corresponded to a multiplier of 5.2); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 586 F. Supp. 2d 732 (S.D. Tex. 2008) (5.2 multiplier); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multipliers of 4.5-8.5); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 198 (S.D.N.Y. 1997) (5.5 multiplier).

The notice informed potential Settlement Class Members that Lead Counsel would apply for reimbursement of its expenses in an amount not to exceed $40,000. Platt Supp. Decl., ¶7. The expenses actually requested, $30,892.32, are substantially less than the maximum amount stated in the Notice. To date, no Settlement Class Member has objected to the request for reimbursement of expenses.

## III.    CONCLUSION

Lead Counsel respectfully requests that the Court award attorneys' fees of $100,000 (28.6% of the total benefit to the Class); and $30,892.32 in Lead Counsel's litigation expenses.

DATED: August 12, 2020                     Respectfully submitted,

                              By:
                                      /s/ Adam Apton

                                   Nicholas I. Porritt
                                   Adam M. Apton
                                   LEVI & KORSINSKY, LLP
                                   55 Broadway, 10th Floor
                                   New York, NY 10006
                                   Telephone:  (212) 363-7500
                                   Facsimile:   (212) 363-7171
                                   Email: nporritt@zlk.com
                                   Email: aapton@zlk.com

                                   *Attorneys for Lead Plaintiff Jose Acosta  and*
                                   *Lead Counsel for the Proposed Class*